Chartiers Valley School District and Township of Scott *v.* Board of Property Assessment, Appeals and Review and Virginia Mansions Apartments, Inc. Virginia Mansions Apartments, Inc., Appellant.

Argued October 7, 1985, before Judges ROGERS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Benjamin B. Wechsler, II,* with him, *George Shorall,* for appellant.

*Thomas J. Dempsey,* for appellee, Chartiers Valley School District and Township of Scott.

*William J. Fahey,* for appellee, Board of Property Assessment, Appeals and Review of Allegheny County.

*Ira Weiss,* with him, *James H. McLean,* for appellee, County of Allegheny.

OPINION BY JUDGE ROGERS, December 27, 1985:

The Virginia Mansions Apartments, Inc. (taxpayer) has appealed a final order of the Court of Common Pleas of Allegheny County, by Senior Judge FREDERICK G. WEIR, fixing the market value of its property for local tax purposes for the triennium 1976-1977-1978

and for the year 1979 at $3,000,000 and its assessment, at the predetermined ratio of 50 percent of market value, at $1,500,000.

The taxpayer's property is located in Scott Township (township) and Chartiers Valley School District (school district). It consists of a tract of land improved with two nine-story apartment buildings containing 188 housing units, a swimming pool, health club, offices, shops and a restaurant building housing The Samurai Japanese Restaurant.

This litigation began in 1972, when the taxpayer, the township, and the school district appealed the then assessment. In February 1974 the parties, with court approval, entered into an agreement that the market value and assessment for the year 1975 should be respectively $3,000,000 and $1,500,000.

The Allegheny County Board of Property Assessment, Appeals and Review (board), disregarding the agreement, fixed the assessment for 1975 at $1,511,000; but the taxpayer appealed and the board, in proceedings in which the taxing bodies did not appear, reduced the assessment to $1,000,000 by an order made May 21, 1975. On July 25, 1975, the school district appealed the board's order to the common pleas court. One of the three questions stated by the taxpayer in this appeal is that this appeal was late and that the judiciary has had no jurisdiction of any of these matters since that date. We will discuss this later.

By order made January 23, 1976, President Judge O'MALLEY disposed of the school district's appeal of the 1975 assessment, by vacating the board's action and, based upon the parties' agreement, by fixing the 1975 assessment of the property at $1,500,000. The taxpayer appealed and we affirmed President Judge O'MALLEY's order in *Appeal of Scott Township*, 31 Pa. Commonwealth Ct. 505, 377 A.2d 826 (1977). The Pennsylvania Supreme Court refused allocatur.

Meanwhile, the board fixed the assessment for the 1976-1977-1978 triennium, also at $1,000,000. The taxing bodies appealed but the board dismissed the appeals on May 30, 1978. On July 21, 1978, the taxing bodies appealed. The taxpayer moved to quash these appeals as untimely but President Judge O'MALLEY overruled the motion to quash by order made December 2, 1982. Another of the three questions raised by the appellant is that of the propriety of Judge O'MALLEY's December 2, 1982, order and this too will be the subject of later discussion.

After other proceedings not necessary to describe, the matter of the merits of the assessment for the 1976-1977-1978 triennium and for the year 1979 came on for hearing on the merits before Senior Judge WEIR on December 13, 1983. At the outset of the hearing, the taxpayer's counsel moved to strike the school district's appeal filed July 25, 1975, from the board's action taken May 21, 1975, fixing the assessment at $1,000,-000. Senior Judge WEIR overruled the motion, heard evidence concerning value and predetermined ratio and as first noted fixed the value at $3,000,000 and the assessment at $1,500,000. In addition to challenging Judge WEIR's action overruling its motion to strike the 1975 appeal, the taxpayer contests the propriety of these findings of market and assessed values on various grounds and the latter will constitute the third and final point of discussion in this opinion.

### The School District's Appeal
### to Common Pleas Filed July 25, 1975.

The taxpayer, as just noticed, contends that the school district's appeal made July 25, 1975, from the board's order of May 21, 1975, was late with the consequences that all proceedings after that event were of

no effect for want of the court's jurisdiction.[1] Since the limitation of time for filing appeals from the board to the court was sixty days,[2] this may have been a telling point had it been raised in 1975, but it had been long since barred as *res judicata* when it was raised for the first time in December 1983.

As we have also recorded, on January 23, 1976, the common pleas court by President Judge O'MALLEY vacated the board's action fixing the assessment of the taxpayer at $1,000,000 and increased the assessment to $1,500,000 in accordance with the parties' earlier agreement. The taxpayer appealed the court's order to this court. We affirmed it in *Appeal of Scott Township*, 31 Pa. Commonwealth Ct. 505, 377 A.2d 826 (1977). We are told that the Pennsylvania Supreme Court refused allocatur. Therefore, our order of affirmance was the final order in that, the 1975, assessment case.

The issue of subject matter jurisdiction is *res judicata* and not subject to collateral attack, even though it was not litigated in the first instance or, indeed although as in this case, it was wholly uncontested. *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 378 (1940); *Drummond v. Drummond*, 414 Pa. 548, 200 A.2d 887 (1964); *Commonwealth ex*

---

[1] Section 11 of the Act of June 21, 1939, P.L. 626, *as amended*, 72 P.S. §5452.11, provided in pertinent part:

If a taxpayer has filed an appeal from an assessment, so long as the appeal is pending before the board or before a court on appeal from the determination of the board, as provided by statute, the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any triennial or intertriennial assessment subsequent to the filing of such appeal with the board and prior to the determination of the appeal by the board or the court.

[2] Section 12 of the Act of June 21, 1939, *as amended*, 72 P.S. §5452.12.

*rel. Cook v. Cook,* 303 Pa. Superior Ct. 61, 449 A.2d 577 (1982); *Connellsville Township Supervisors v. City of Connellsville,* 14 Pa. Commonwealth Ct. 532, 322 A.2d 741 (1974). The Court of Common Pleas of Allegheny County tacitly determined that it had jurisdiction when it entered the order of January 23, 1976; that determination was not directly attacked in common pleas or on appeal of the order, which has been final for nine years. It may not be collaterally attacked in this appeal from another order concerning a different subject.

The Township and School District Appeals
to Common Pleas Filed July 21, 1978

It may be recalled that the Allegheny County Board of Property Assessment, Appeals and Review dismissed the taxing bodies' appeal from its assessment of $1,000,000 for the 1976-1977-1978 triennium. On July 21, 1978, the taxing bodies appealed the board action to the common pleas court. On December 2, 1982, the taxpayer moved to quash the appeals as untimely and the court overruled the motion to quash.

The taxpayer contends that the appeal filed fifty-two days after the board's order was entered was late because effective June 27, 1978 the appeal period, which had been 60 days by Section 12 of the Act of June 21, 1939, *as amended,* 72 P.S. §5452.12, was reduced to thirty days by the Judicial Code, 42 Pa. C. S. §5571(b). *See Federal Department Stores, Inc. Appeal,* 78 Pa. Commonwealth Ct. 346, 467 A.2d 908 (1983). The taxing bodies contend that because they had sixty days to appeal when the board entered its order on May 30, 1978 and twenty-eight days had elapsed when the thirty day period went into effect on June 27, 1978, it would be unfair to apply the new enactment in this case. We believe that the Statutory Construction Act at 1 Pa. C. S. §1975 controls:

Whenever a limitation or period of time prescribed in any statute for acquiring a right or barring a remedy, or for any other purpose, has begun to run before a statute repealing such statute takes effect, and the same or any other limitation is prescribed in any other statute passed by the same General Assembly, the time which has already run shall be deemed part of the time prescribed as such limitation in such statute passed by the same General Assembly.

This provision had the effect of adding thirty days to the twenty-eight days which had elapsed, giving the taxing bodies a total of fifty-eight days from May 30, 1978 within which to file their appeals, or until July 27, 1978. Hence, the appeal filed July 21, 1978, was timely and the taxpayer's motion to quash was properly overruled.

## The Merits

Both parties adduced evidence of the market value of the taxpayer's property. The taxpayer contests Judge WEIR's finding that its property's market value was higher than the evidence it produced suggests. Concerning the ratio of assessment to market value, the taxing bodies stood on the 50% predetermined ratio fixed by the County Commissioners.[3] The taxpayer adduced opinion evidence suggesting that the ratio actually applied in 1975 and 1976 was about 30%. Judge WEIR found in effect that the taxpayers had not responded to the prima facie evidence of the validity of the assessment with credible evidence[4] and there-

---

[3] Section 1 of the Act of February 21, 1984, P.L. 96, 72 P.S. §5452.1a, amended the Act of 1939, so as to confer the power to fix predetermined ratios upon the Board of Property Assessment, Appeals and Review.

[4] See Deitch Co. v. Board of Property Assessment, 417 Pa. 213, 221-22, 109 A.2d 397, 402 (1965).

upon applied the Commissioner's predetermined ratio to his finding of market value.

Judge WEIR's determinations were factual in nature. They are now before us for appellate review. The scope of that review bears repeating here in the words of Mr. Chief Justice JOHN W. KEPHART in *Glenn v. Trees,* 276 Pa. 165, 167-68, 120 A. 109, 111 (1923):

> It has been consistently held, and is well known to counsel for appellant, that the findings of fact by a chancellor have the force and effect of a verdict of a jury, and will not be disturbed if there is evidence to support them. In certain stages of litigation, passing through different channels of our judicial system, juries and judges of the lower courts, as tryers of fact, must assume full responsibility in finally determining matters submitted through the evidence for their consideration, leaving to the appellate courts the duty of correcting such errors of law or procedure as may appear in the record. These rules of jurisprudence not only speed the termination of causes, but equalize the burden of judicial labors, impressing the public mind with the importance of the tribunal of first instance; they charge these officials with the grave responsibilities undertaken in performing such duties. There is an additional reason why the rule should be as it is. In ascertaining facts, contact must be had with the witnesses and much can be learned affecting credibility from their manner in testifying. This information cannot be reduced to matters of record. (Citations omitted.)

The merits in this case depend upon the credibility of the evidence.

Concerning market value, the taxing bodies offered the testimony of an expert on the subject who, employ-

ing both the income analysis and market data approaches to valuation, formed the opinion that the market value of the taxpayer's property was $5,000,-000. The taxpayer's expert, who principally employed the income analysis approach, formed the opinion that the market value of the apartment buildings was $1,-265,000 and, in this instance using original cost less depreciation, that the market value of the restaurant building was $240,000, for a total of $1,505,000. Judge WEIR determined that the market value for the tax years in question was $3,000,000 and, applying the 50% predetermined ratio, that the assessment should be $1,500,000. Judge WEIR described his findings as being based on the evidence produced at the hearing; but noticed, as do we, that he found the market and assessed values to be the same in amounts as the parties had agreed they should be for the year 1975.

As we have recorded, the predetermined ratio of assessed to market value fixed by the Allegheny County Commissioners[3] for the years in question was 50%. The taxpayer adduced the testimony of Dr. Raymond Richman, a professional economist and statistician and no stranger to common level ratios in Allegheny County.[5] Dr. Richman testified that he took a sample completely randomly of about 410 properties sold during 1975 and compared the sales prices against the assessments. He found that the assessments ran about 30% of the sales prices. Unfortunately, he no longer had the records of the properties tested and could not be cross-examined concerning location, uses, or type of property, although many he recalled to be residences. Furthermore, the samples were taken without regard to the assessment districts within which they were

[3] See footnote 3, infra.

[5] See Massachusetts Mutual Life Insurance Company Tax Assessment Case, 426 Pa. 566, 235 A.2d 790 (1967).

located. The witness also agreed that some of his samples may have been sales of vacant land or representative of price paid rather than market value.

The taxpayer's witness also described a U.S. Census Bureau work on Taxable Property Values and Assessments/Sales Price Ratios where, based on 7500 samples, the reporters found an assumed common level ratio in Allegheny County of about 30% during the year 1976. The Census Bureau study itself was not offered into evidence. The witness had not participated in this work, but he testified to his understanding that a large number of the samples were of residential properties, that the sales sampled were all effected in the first six months of 1976, and that this period was one of rapidly rising residential real estate sales.

In *Pittsburgh Miracle Mile Towne & Country Shopping Center, Inc. v. Board of Property Assessment*, 417 Pa. 243, 247, 209 A.2d 394 (1965), the Supreme Court wrote that evidence of a currently prevailing or common level ratio based on actual sales, if available, may be received but only "if the manner in which such evidence would be introduced permits of cross-examination." The taxpayer's witness did not have with him any of the data concerning the 410 samples upon which his opinion of the 1975 common level was based and could not be cross-examined except upon generalities such as that the samples were from all of the county assessment districts and that the subjects included a variety of uses, including residences. The witness had no first hand knowledge concerning the 7500 samples used by the Census Bureau as the foundation of its 1976 report beyond the fact that they included sales of properties located throughout the county and included many residences. In short, the witness' testimony did not permit of cross-examination.

For these reasons, we believe that the trial judge's conclusion that the taxpayer's evidence concerning ratio should be disregarded was proper and that his determination of the merits was unexceptionable.

Order affirmed.

### ORDER

AND Now, this 27th day of December, 1985, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.