BERNADETTE RED CHERRIES WALKSALONG, APPELLANT, V.
WARREN MACKEY, APPELLEE.

549 N.W.2d 384

Filed June 7, 1996.   No. S-94-635.

John M. Peebles, of Peebles & Evans, P.C., for appellant.

Thomas A. Fitch, of Fitch & Tott Law Firm, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

This is an appeal from a judgment of the district court for Knox County, which found that an order of the Northern

Cheyenne Tribal Court of Montana granting Bernadette Red Cherries Walksalong, the mother, custody of the minor child, Nancy Mackey, was not entitled to registration in Nebraska under the Uniform Enforcement of Foreign Judgments Act, Neb. Rev. Stat. § 25-1587 et seq. (Reissue 1989) (now codified at Neb. Rev. Stat. § 25-1587.01 et seq. (Reissue 1995)). The district court found that the tribal court order was not entitled to full faith and credit because the tribal court did not have jurisdiction over the child at the time of the custody determination. The mother appealed the district court decision to the Nebraska Court of Appeals, and the case was transferred to this court upon our own motion. Because we conclude that the tribal court lacked subject matter jurisdiction in this case, we affirm the district court ruling denying full faith and credit to the tribal court order.

## FACTUAL BACKGROUND

Nancy Mackey was born December 10, 1988, at Billings, Montana. Her parents are Bernadette Red Cherries Walksalong, a member of the Northern Cheyenne Tribe of Montana, and Warren Mackey, a member of the Santee Sioux Tribe of Nebraska. The child is $9/32$ Santee Sioux and $7/32$ Northern Cheyenne. At the time of the birth, the father was living on the Santee Sioux Reservation in Nebraska, while the mother and child resided in Lame Deer, Montana, part of the Northern Cheyenne Reservation. The child lived with the mother or various relatives on the Montana reservation until she was approximately 5 months old, at which time the mother requested the father to temporarily take the child, pending her location of permanent housing on the reservation. Prior to obtaining custody of the child, and without the mother's consent, the father filled out an application to have the child admitted as a member of the Santee Sioux Tribe. The father picked up the child in Montana on April 7, 1989, and returned to the Santee Sioux Reservation in Nebraska. The child was accepted into the Santee Sioux Tribe in May 1989 and has continued to reside with the father on the Santee Sioux Reservation. The mother testified at trial that she has requested the return of the child many times, but that the

father has refused. The mother has only seen the child twice since physical custody was transferred; she asserts she has requested visitation on other occasions, but her requests have been denied.

In November 1990, the mother filed a petition for guardianship in the Northern Cheyenne Tribal Court. After various address corrections were made to the petition, the father was served with a copy of the amended petition and summons on August 15, 1991, by certified mail, for which he signed. The father did not file an answer, and he did not appear at the tribal guardianship proceeding. On December 20, an order was issued by an associate judge of the tribal court, granting full custody of the child to the mother.

On June 28, 1993, the mother filed a petition for registration of foreign judgment in the district court for Knox County, seeking to register the tribal court order. The father was served with notice of the petition and filed an answer asserting as affirmative defenses that the tribal court was without jurisdiction to decide the custody of the child because the child was a member of the Santee Sioux Tribe prior to entry of the tribal court order, the child resided with the father on the Santee Sioux Reservation at the time of the court order, and the tribal court failed to properly serve notice of the proceedings on the father. A trial was held, and the district court found that the tribal court order was not entitled to full faith and credit because the tribal court lacked jurisdiction over the child. The mother's petition was dismissed, and this appeal followed.

## ASSIGNMENT OF ERROR

The mother asserts that the district court erred in finding that the Northern Cheyenne Tribal Court lacked jurisdiction over the child at the time of the custody order.

## STANDARD OF REVIEW

The Full Faith and Credit Clause of the U.S. Constitution prohibits a Nebraska court from reviewing the merits of a judgment rendered in a sister state, but a foreign judgment can be collaterally attacked by evidence that the rendering court was without jurisdiction over the parties or the subject matter

of the case. *Miller v. Walter*, 247 Neb. 813, 530 N.W.2d 603 (1995). The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court; however, findings of the lower court as to underlying factual disputes, if any, in regard to the jurisdictional issue will be upheld unless they are clearly erroneous. *Chrysler Corp. v. Lee Janssen Motor Co.*, 248 Neb. 281, 534 N.W.2d 568 (1995).

## ANALYSIS

As an initial matter, we note that the Indian Child Welfare Act (ICWA) is inapplicable to this case, as this matter involves a custody dispute between parents in which one of the parents has physical custody of the child. See, Neb. Rev. Stat. § 43-1503(1) (Reissue 1993) (defining "child custody proceeding" for purposes of ICWA); Guidelines for State Courts, Indian Child Custody Proceedings, 44 Fed. Reg. 67,584, 67,587 (1979) (providing that child custody disputes arising in the context of divorce, separation, or other similar domestic relations proceedings are not covered by ICWA so long as custody is awarded to one of the parents); *In re Custody of Sengstock*, 165 Wis. 2d 86, 477 N.W.2d 310 (Wis. App. 1991) (stating that ICWA concerns cases where custody of a Native American child is to be given to someone other than either one of the parents); *Application of Defender*, 435 N.W.2d 717 (S.D. 1989) (stating that placement of the child involved therein with either of her natural parents did not fit within the definition of custody proceeding and thus did not implicate ICWA).

This action was brought by the mother pursuant to the Uniform Enforcement of Foreign Judgments Act in effect at the time, § 25-1587 et seq. (Reissue 1989). The statutes provide for registration and enforcement of a foreign judgment in Nebraska. However, the term "foreign judgment" as set forth in the act is limited to "any judgment, decree or order of a court of the United States or of any state or territory *which is entitled to full faith and credit in this state*." (Emphasis supplied.) § 25-1587. The district court found that the judgment of the Northern Cheyenne Tribal Court was not entitled to full

faith and credit due to a lack of jurisdiction, and, therefore, it was not a "foreign judgment" entitled to be registered and enforced in Nebraska.

It is clear that in connection with the Uniform Enforcement of Foreign Judgments Act, while Nebraska courts are prohibited from reviewing the merits of a foreign judgment, Nebraska courts may examine whether the foreign judgment was rendered with proper jurisdiction and may refuse to register and enforce a foreign judgment rendered without jurisdiction over the parties or the subject matter. *Miller v. Walter, supra; First Fed. Sav. & Loan Assn. v. Wyant,* 238 Neb. 741, 472 N.W.2d 386 (1991); *Olson v. England,* 206 Neb. 256, 292 N.W.2d 48 (1980). Thus, the district court was authorized to examine the jurisdiction underlying the tribal court order awarding custody of the child to the mother. It is this determination of jurisdiction, or lack thereof, which is now before the court for review.

The district court made the following findings of fact: The child has resided on the Santee Sioux Reservation in Nebraska with her father since April 7, 1989; the child was an enrolled member of the Santee Sioux Tribe prior to the tribal court order; the child was not an enrolled member of the Northern Cheyenne Tribe; the child was not domiciled on the Northern Cheyenne Reservation; and the mother voluntarily gave custody of the child to the father in April 1989. These facts were not in dispute at trial, and, obviously, the district court's findings were not clearly erroneous.

The Northern Cheyenne Tribal Court Domestic Relations Code, which was received in evidence, provides:

A. The Northern Cheyenne Reservation Court has jurisdiction to make a child custody determination by initial or modification decree if:

1. The Northern Cheyenne Reservation:

a. Is the home of the child at the time of commencement of the proceedings in Reservation Court; or

b. Has been the child's home within six (6) months before commencement of proceedings and the child is absent from this home because of his removal or retention by a person claiming custody or for other reasons,

and a parent or person acting as parent continues to live within the Northern Cheyenne Reservation;

2. It is in the best interest of the child that the Court assumes jurisdiction because:

a. The child and his parents or the child and at least one contestant have a significant connection with the Northern Cheyenne Reservation; and

b. There is substantial evidence concerning the child's present or future care, protection, training, and personal relationships available to the Court;

3. The child is physically present within the Reservation; and:

a. Has been abandoned; or

b. It is necessary in an emergency to protect him because he has been subjected to or threatened with mistreatment or abuse or is neglected or dependent; or

4. No state or other tribal government has jurisdiction under provisions substantially in accord with this Code, or another state or reservation has declined to exercise jurisdiction on the grounds that the Northern Cheyenne Reservation is the more appropriate forum to determine custody of the child.

B. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody in the Northern Cheyenne Court.

Chapter 3, § 8-3-1. These provisions are very similar to the jurisdictional provisions of the Nebraska Child Custody Jurisdiction Act (NCCJA). See Neb. Rev. Stat. § 43-1203 (Reissue 1993). Both the provisions of chapter 3, § 8-3-1, and the NCCJA are primarily concerned with subject matter jurisdiction and not personal jurisdiction. Submission of a person to jurisdiction of the court does not alone confer jurisdiction under the Uniform Child Custody Jurisdiction Act. *Mace v. Mace*, 215 Neb. 640, 341 N.W.2d 307 (1983). The jurisdictional standards of the act are designed to achieve both certainty and predictability in the enforcement of child custody decrees while assuring that a court which assumes jurisdiction acts in the child's best interests. *Mace v. Mace, supra.* See, also, *Slidell v. Valentine*, 298 N.W.2d 599 (Iowa 1980).

The Northern Cheyenne Tribal Court did not exercise jurisdiction under subsection A(1) or (3) of chapter 3, § 8-3-1, because it is undisputed that the child was not residing on the Northern Cheyenne Reservation at the time of the tribal court proceeding or within 6 months before the proceeding. Similarly, subsection A(4) of chapter 3, § 8-3-1, does not control the tribal court's determination of jurisdiction because the Northern Cheyenne Tribal Court did not have exclusive jurisdiction over the child, since the ICWA was inapplicable, and no state or reservation had declined to exercise jurisdiction on the grounds that the Northern Cheyenne Tribal Court was the more appropriate forum. Under provisions substantially in accord with the Northern Cheyenne Tribal Court Domestic Relations Code, a district court of Nebraska would have at least concurrent jurisdiction, as Nebraska clearly was the child's home state at the time of the tribal proceeding.

The only possible provision of chapter 3, § 8-3-1, that could provide tribal court jurisdiction over the child is subsection A(2); and this section shall be analyzed in light of the facts adduced at trial. Subsection A(2) requires a finding that the child and at least one of the parents have a significant connection with the Northern Cheyenne Reservation, *and* a finding that substantial evidence concerning the child's present or future care, protection, training, and personal relationships is available to the Northern Cheyenne Tribal Court. The mother had significant contacts with the Northern Cheyenne Reservation in that the mother had lived on the reservation during various periods of her life and was domiciled there at the time of the tribal court proceedings.

The child's contacts with the Northern Cheyenne Reservation, however, were much less significant. While the child resided on the reservation for the first 5 months of her life, the child had no subsequent contact with the reservation. The child has lived on the Santee Sioux Reservation in Nebraska since April 1989. Therefore, substantial evidence as to the child's care, protection, training, and personal relationships, both presently and in the future, is most readily available in Nebraska, rather than the Northern Cheyenne Reservation in Montana.

Furthermore, the Northern Cheyenne Tribal Court Domestic Relations Code provides that in determining the best interests of the child, the court may look at the interaction and relationship of the child with her parent or parents, siblings, extended family, and other significant parties; the child's adjustment to her home, school, and community; and whether the child has been incorporated into the home of one of the parents. Chapter 3, § 8-3-2. In this case, the child had very little interaction with the mother subsequent to the first 5 months of the child's life. There were allegations by the mother that visitation efforts were frustrated by the father, who testified that he did nothing to hinder visitation and, in fact, provided visitation on two occasions when the mother was in the Santee area. The record is silent regarding what steps, if any, were taken by the mother or anyone on her behalf to rectify the alleged visitation problem.

In contrast to the limited interaction with the mother, prior to the tribal court proceeding, the child had been living with the father and his family in Nebraska for more than 2½ years. The evidence revealed that the child was well adjusted to her home and environment on the Santee Sioux Reservation in Nebraska. The child had been fully incorporated into the home of the father. Thus, awarding custody of the child to the mother was not in the best interests of the child. Therefore, subsection A(2) does not provide a proper basis for tribal court jurisdiction.

We hold that, in the absence of a court's having subject matter jurisdiction in proceedings affecting custody of a child, a foreign custody judgment is not entitled to full faith and credit and, consequently, is not entitled to be registered in Nebraska under the Uniform Enforcement of Foreign Judgments Act. When applying the provisions of chapter 3, § 8-3-1, of the Northern Cheyenne Tribal Court Domestic Relations Code to the facts of this case, we conclude that the Montana tribal court had no basis for asserting subject matter jurisdiction in the guardianship proceedings. Because the Montana tribal court did not have subject matter jurisdiction in the guardianship proceedings, the tribal court order was not entitled to full faith and credit and, consequently, was not entitled to be reg-

istered in Nebraska under the Uniform Enforcement of Foreign Judgments Act.

## CONCLUSION
The district court so found, and its judgment is affirmed.

AFFIRMED.