SUSAN H., AS NEXT FRIEND AND GUARDIAN OF BENJAMIN H., APPELLEE, V. KEITH L., APPELLANT.
609 N.W. 2d 659

Filed April 27, 2000.    No. S-98-1012.

Pamela Hogenson Govier and, on brief, John A. Kinney, of Frost, Meyers, Govier & Milone, for appellant.

Kathleen M. Schmidt for appellee.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

In a paternity action brought by Susan H., as next friend and guardian of Benjamin H., the Douglas County District Court

awarded child support and a percentage of child-care expenses and uninsured medical expenses incurred on behalf of Benjamin. Keith L. appeals.

## SCOPE OF REVIEW

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Spulak v. Tower Ins. Co.*, 257 Neb. 928, 601 N.W.2d 720 (1999).

## FACTS

Benjamin was born January 11, 1985, in Hastings, Nebraska. A petition to establish paternity was filed in the district court for Oklahoma County, Oklahoma, on or about November 21, 1986. The petition alleged that Susan was the natural mother of Benjamin and that Keith was his natural father.

On June 8, 1987, a decree of paternity was entered by the district court for Oklahoma County, Oklahoma, which found that Keith was the natural father of Benjamin and that Keith should pay support to Susan for the benefit of Benjamin in the sum of $20,000, with $10,000 due on July 15, 1987, and $2,000 due on the 15th day of July each year thereafter for 5 years.

When the decree of paternity was entered, Okla. Stat. Ann. tit. 10, § 85 (West 1981) (which we refer to as "10 O.S. § 85") provided: "A settlement that is approved by the district court relieves the natural father of all other liability for the support and education of a child that is born out of wedlock to the extent to which settlement is honored by him." This statute was subsequently repealed by the Oklahoma Legislature effective September 1, 1994.

On November 8, 1992, Susan wrote a note to Keith in which she stated: "This is to let you know I got your child support check in 2 parts of $1000.00 each this year well before the required deadline. . . . I acknowledge that this completes the terms of our contract."

On December 22, 1995, Susan filed a petition in the district court for Douglas County, Nebraska, in which she sought to establish paternity and child support. The petition alleged that she was the biological mother of Benjamin and that she and

Benjamin were residents of Douglas County. The petition further alleged, inter alia, that Keith was the biological father of Benjamin; that Benjamin was in need of financial support from Keith; and that Keith was capable of supporting Benjamin by means of monthly payments, paying expenses incurred pursuant to his birth, paying the cost of providing for his physical needs since birth, and paying other costs incurred on his behalf.

Keith's answer alleged that Susan's claim was barred by res judicata, laches, accord and satisfaction, and estoppel. Specifically, Keith claimed that the doctrine of res judicata barred Susan's claim and that the Douglas County District Court should give full faith and credit to the judgment of the Oklahoma court because the former judgment was a final judgment on the merits which involved the same parties and privities. In addition, Keith argued that Oklahoma law should apply to this action.

Susan's reply denied that the affirmative defenses asserted by Keith applied and denied that Oklahoma law applied to the action. Susan claimed that the repeal of 10 O.S. § 85 voided the child support portion of the Oklahoma decree of paternity. She argued that Benjamin had an independent right to file an action for support in the State of Nebraska that could not be contracted away and that the decree of paternity did not eliminate his right to an action for support and education in Nebraska. Subsequently, a motion for summary judgment filed by Keith was overruled.

Following trial, the Douglas County District Court entered an order finding that it had jurisdiction over the subject matter and the parties. The court noted that Susan had signed a decree of paternity in the State of Oklahoma in June 1987 which ordered Keith to pay support to Susan for the benefit of Benjamin in the amount of $20,000 over the course of 5 years. According to the decree, this amount constituted a full settlement of Keith's obligations for child support, which Keith honored by making the required payments. The court noted that 10 O.S. § 85, which was in effect at the time of the Oklahoma decree, had subsequently been repealed by the Oklahoma Legislature.

Relying on *State Dept. of Human Services v. T.D.G.*, 861 P.2d 990 (Okla. 1993), the district court concluded that the Oklahoma

settlement was void as against public policy and that under *T.D.G.*, Benjamin had a separate right of action for child support that could not be barred by the parents. The court also determined that under Nebraska law, Benjamin was entitled to proceed by his guardian or next friend to establish paternity and ongoing support during his minority. The court then held that public policy and Nebraska law gave Benjamin an independent right to maintain a suit for child support against Keith and that the doctrine of res judicata did not bar the court from hearing the action.

Due to the high income level of the parents, the district court found it was necessary to deviate from a strict application of the Nebraska Child Support Guidelines in order to determine the appropriate amount of child support to be awarded. The court found that Keith should pay child support to Susan, through the office of the clerk of the district court, at the rate of $1,200 per month commencing September 1, 1998, and continuing on the first day of the month thereafter for so long as Benjamin was eligible to receive support. Based upon the particular facts and circumstances of the case, the court also found it appropriate to award child support retroactive to December 1995, when the petition to establish paternity and child support was filed. Keith was also ordered to pay a percentage of child-care expenses and uninsured medical expenses.

Keith filed his notice of appeal on September 17, 1998. On September 22, the district court entered an order nunc pro tunc which attempted to clarify the exact amount of retroactive child support due.

## ASSIGNMENTS OF ERROR

Keith assigns as error that the district court erred (1) in failing to sustain his motion for summary judgment, (2) in failing to apply Oklahoma law to this action, (3) in failing to dismiss the petition for paternity based on the affirmative defenses of res judicata and collateral estoppel, and (4) in failing to dismiss the petition for paternity based on the doctrine of equitable estoppel.

## ANALYSIS

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the

court below. *Spulak v. Tower Ins. Co.*, 257 Neb. 928, 601 N.W.2d 720 (1999). The issue presented is whether the decree of paternity entered by the Oklahoma court is entitled to full faith and credit. This is a question of law.

Neb. Rev. Stat. § 43-1406(1) (Reissue 1998) states: "A determination of paternity made by any other state, whether established through voluntary acknowledgment, genetic testing, or administrative or judicial processes, shall be given full faith and credit by this state." A judgment rendered by a sister state court which had jurisdiction is to be given full faith and credit and has the same validity and effect in Nebraska as in the state rendering judgment. *First Fed. Sav. & Loan Assn. v. Wyant*, 238 Neb. 741, 472 N.W.2d 386 (1991). Therefore, as to the issue of paternity, § 43-1406(1) requires us to give full faith and credit to the Oklahoma decree of paternity to the extent that it establishes that Keith is the biological father of Benjamin.

The next question is whether the child support portion of the Oklahoma decree of paternity is entitled to full faith and credit. We first consider whether the Oklahoma court would enforce this particular decree of paternity. See *In re Paternity of B.W.S.*, 131 Wis. 2d 301, 388 N.W.2d 615 (1986).

It does not appear that the courts of Oklahoma have had the occasion to consider the validity and effect of a settlement pursuant to 10 O.S. § 85 since the statute was repealed effective September 1, 1994. However, before the statute was repealed, the Supreme Court of Oklahoma addressed the issue of whether an unwed mother could waive her child's right to support from the child's father. See *State Dept. of Human Services v. T.D.G.*, 861 P.2d 990 (Okla. 1993). Although *T.D.G.* deals with an agreement wherein the mother waived child support, it does provide guidance as to whether an Oklahoma court would enforce the Oklahoma decree of paternity.

In *T.D.G.*, an unwed mother applied for Aid to Families with Dependent Children, and her application was approved by the Department of Human Services. Pursuant to Oklahoma law, the mother executed an assignment to the department of any support rights she or her child might be entitled to receive. Thereafter, the department commenced an action against T.D.G. to determine paternity and establish support obligations. T.D.G. moved

to dismiss the action on the basis that he and the mother had previously entered into an agreement whereby T.D.G. acknowledged that he was not the father of the child and released all claims to the child incident thereto, including guardianship and rights of visitation. In consideration, the mother agreed not to prosecute a paternity action against T.D.G., seek to obtain child support, or attempt to hold him out as the father of said child.

In analyzing the issue of whether an unwed mother could waive her child's right to support from the child's father, the Supreme Court of Oklahoma considered 10 O.S. § 85 with respect to Oklahoma case law. The court noted that since 1917, it had held that a married woman could not, by separate contract, relieve her husband of the obligation to support his minor children. The court also noted that pursuant to Okla. Stat. tit. 10, § 83 (1991) (10 O.S. § 83), an individual judicially determined to be the father of a child born out of wedlock was liable for the support and education of the child to the same extent as the father of a child born in wedlock. The court concluded that 10 O.S. § 83 imposed identical duties of support upon husbands and unwed fathers for the support of their offspring. The court determined that since married women could not relieve their husbands of support obligations to their children, an unwed mother could not, through a settlement agreement, relieve a putative father of the obligation to support his minor child. The court noted that equal protection concepts would be violated if the right to seek support from parents during a child's minority was granted to children born in wedlock but denied to those who are not.

> Once a state grants an opportunity for legitimate children to obtain parental support, it must also grant the opportunity to children born out of wedlock. If a state posits a judicially enforceable right on behalf of children to needed support, as the Legislature has done through § 83, there is no constitutionally sufficient justification for denying the same right to a child born out of wedlock. To do so would be a denial of equal protection.

*State Dept. of Human Services v. T.D.G.*, 861 P.2d at 994.

The Supreme Court of Oklahoma also set forth public policy concerns it had with such an agreement.

Public policy demands that, in matters of support, the best interest of the child be paramount. We can perceive of no situation in which allowing parents to forever bar a child's right to support would be in the best interest of the child. A contract which attempts permanently to deprive a child of support is void as against public policy.

*State Dept. of Human Services v. T.D.G.*, 861 P.2d 990, 993-94 (Okla. 1993).

Oklahoma law provides that child support orders in divorce proceedings are never final in the sense that such orders may be modified under certain circumstances. See, *Stephen v. Stephen*, 937 P.2d 92 (Okla. 1997); *Pharaoh v. Pharaoh*, 865 P.2d 1279 (Okla. App. 1993). Thus, we believe that Oklahoma courts would recognize the denial of equal protection in allowing child support awards under divorce proceedings to be modifiable while not allowing such modification in paternity actions. Therefore, the rationale of the Supreme Court of Oklahoma with respect to paternity actions set forth in *T.D.G.* also applies to the modification of child support in paternity actions.

We conclude that an Oklahoma court applying the rationale of *T.D.G.* to an action involving modification of support in a paternity action would not enforce the Oklahoma decree of paternity to the extent that the support was not modifiable. The concerns of the Supreme Court of Oklahoma regarding equal protection and public policy lead us to conclude that an Oklahoma court would not enforce a child support agreement that was not modifiable. In further support of our conclusion, we note that the Oklahoma Legislature repealed 10 O.S. § 85 less than 1 year after the court's decision in *T.D.G.*

Full faith and credit requires us to give no greater deference to the decree than would the Oklahoma court. Accordingly, we decline to give full faith and credit to the portion of the Oklahoma decree of paternity which limited the amount of child support. Therefore, we hold that the decree of paternity does not bar an action by Benjamin for support in Nebraska.

With respect to the amount of child support that the Douglas County District Court ordered Keith to pay, we need not examine whether this was an abuse of discretion, since the issue was not assigned as error or argued on appeal. Because we conclude

that our full faith and credit analysis is dispositive of the case, we do not address Keith's remaining assignments of error.

## CONCLUSION

For the reasons set forth herein, we conclude that full faith and credit must be given to that portion of the Oklahoma decree of paternity which establishes that Keith is the biological father of Benjamin. However, since we conclude that an Oklahoma court would not enforce the child support portion of the decree, we do not give that portion full faith and credit in Nebraska. Accordingly, the decree does not bar Benjamin from bringing this action for support, and the judgment of the district court is affirmed.

AFFIRMED.

CONNOLLY, J., not participating.