SERENNA D. RUSSELL, APPELLANT, V.
JOAN C. BRIDGENS, APPELLEE.
647 N.W.2d 56

Filed June 28, 2002.    No. S-01-965.

Susan Ann Koenig and Angela Dunne Tiritilli, of Law Office of Susan Ann Koenig, P.C., for appellant.

John F. Eker III for appellee.

Christine Biancheria, of Biancheria, Eriksen, Maliver & Angell, P.C., Leonore F. Carpenter, Frank Cervone, Susan Frietsche, and Tiffany L. Palmer, for amici curiae Support Center for Child Advocates et al.

Amy A. Miller for amici curiae American Civil Liberties Union Foundation of Nebraska et al.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Appellant, Serenna D. Russell, appeals from an order of the district court for Douglas County granting the summary judgment motion of appellee, Joan C. Bridgens, and a further order overruling Russell's motion for reconsideration. We conclude that the district court erred in granting the summary judgment motion, and reverse, and remand for further proceedings.

## FACTS

Bridgens adopted a minor child in Pennsylvania in September 1996. In December 1997, both Bridgens and Russell adopted the same minor child in what is referred to in the record as a "coparent" adoption. Although a certified copy of the 1997 adoption decree is a part of the record, the petition requesting such adoption is not. The certified decree expressly states that "[a]ll requirements of the Acts of Assembly have been fulfilled and complied with."

Bridgens and Russell are unmarried and of the same sex. They lived together and raised the child until August 1999. At that time, Russell and the minor child, who both had been residing with Bridgens in Germany, returned to the United States while Bridgens remained in Germany. On November 21, 2000, Russell filed a petition to establish custody and support for the minor child in the district court for Douglas County, Nebraska. After answering and cross-petitioning for custody and support, Bridgens filed a motion for summary judgment on May 16, 2001. The motion alleged that the 1997 adoption was invalid under Pennsylvania law. On July 23, 2001, the district court granted Bridgens' motion for summary judgment. The court reasoned that Pennsylvania law required Bridgens to terminate her parental rights prior to the 1997 adoption and found that "[i]t appears to the Court this was not done and [Russell] has not offered evidence to the contrary." In a subsequent order denying Russell's motion for reconsideration, the district court clarified that because the Pennsylvania statutory requirements for adoption were not met, the Pennsylvania court lacked subject matter jurisdiction to grant the adoption and that therefore, the adoption was not entitled to full faith and credit under the U.S. Constitution. Russell timely appealed, and we moved the case to our docket on our own motion pursuant to our authority to regulate the dockets of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Russell assigns that the district court erred in (1) failing to apply the Full Faith and Credit Clause of the U.S. Constitution, (2) failing to recognize that res judicata bars an attack on the Pennsylvania decree, (3) not admitting Russell's affidavit in evidence, (4) failing to consider and find equitable estoppel as a bar to Bridgens' motion for summary judgment, and (5) failing to address Russell's status as a parent under the in loco parentis doctrine and failing to consider the minor's best interests.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as

to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *McCarson v. McCarson*, 263 Neb. 534, 641 N.W.2d 62 (2002); *Altaffer v. Majestic Roofing*, 263 Neb. 518, 641 N.W.2d 34 (2002). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *McCarson v. McCarson, supra.*

## ANALYSIS

The dispositive issue in this appeal is whether the record demonstrates as a matter of law that the 1997 Pennsylvania adoption decree was not entitled to full faith and credit under the U.S. Constitution. A judgment rendered in a sister state court which had jurisdiction is to be given full faith and credit and has the same validity and effect in Nebraska as in the state rendering judgment. *Susan H. v. Keith L.*, 259 Neb. 322, 609 N.W.2d 659 (2000). The Full Faith and Credit Clause of the U.S. Constitution prohibits a Nebraska court from reviewing the merits of a judgment rendered in a sister state, but a foreign judgment can be collaterally attacked by evidence that the rendering court was without jurisdiction over the parties or the subject matter. *Walksalong v. Mackey*, 250 Neb. 202, 549 N.W.2d 384 (1996). In the instant case, Bridgens seeks to collaterally attack the judgment on the basis that the Pennsylvania court lacked subject matter jurisdiction to grant the adoption.

Whether the Pennsylvania court had subject matter jurisdiction is dependent upon Pennsylvania law. See *Miller v. Kingsley*, 194 Neb. 123, 230 N.W.2d 472 (1975) (holding only defenses that would be valid in rendering state can be relied upon by courts of another state). Bridgens' argument is based upon the contention that the Pennsylvania court lacked subject matter jurisdiction because Bridgens and Russell did not comply with the requirements of the Pennsylvania adoption statutes at the time of the 1997 decree. Specifically, Bridgens argues that the extrinsic evidence in the record establishes that she had not relinquished her parental rights prior to the 1997 "coparent" adoption and that the requisite parental consents were not included in the

adoption petition. In this regard, 23 Pa. Cons. Stat. Ann. § 2701(7) (West 2001) provides that a petition for adoption shall state that "all consents required by section 2711 (relating to consents necessary to adoption) are attached as exhibits or the basis upon which such consents are not required." Further, 23 Pa. Cons. Stat. Ann. § 2711(a)(3) (West 2001) requires consent from "[t]he parents or surviving parent of an adoptee who has not reached the age of 18 years." In particular, the consenting parent must state, in part, "I hereby voluntarily and unconditionally consent to the adoption of the [minor] child. I understand that by signing this consent I indicate my intent to permanently give up all rights to this child." § 2711(d)(1). See *In re Adoption of C.C.G.*, 762 A.2d 724 (Pa. Super. 2000). An exception to the unqualified consent requirement is found in 23 Pa. Cons. Stat. Ann. § 2903 (West 2001), which provides that "[w]henever a parent consents to the adoption of his child by his spouse, the parent-child relationship between him and his child shall remain whether or not he is one of the petitioners in the adoption proceeding." In addition, 23 Pa. Cons. Stat. Ann. § 2901 (West 2001) provides that "[u]nless the court for cause shown determines otherwise, no decree of adoption shall be entered unless . . . all other legal requirements have been met."

■ A party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Polinski v. Sky Harbor Air Serv.*, 263 Neb. 406, 640 N.W.2d 391 (2002). Once the moving party makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id.* As the party moving for summary judgment, it was Bridgens' burden to demonstrate that the Pennsylvania court lacked subject matter jurisdiction due to lack of compliance with the requirements of the adoption statutes. The record before us, however, contains only the 1997 Pennsylvania adoption decree which affirmatively alleges on its face that it was decreed in conformance with Pennsylvania law. There is no evidence in the record establishing that the necessary consents were not included with the petition for adoption or that Bridgens did not,

in fact, relinquish her parental rights prior to the 1997 "coparent" adoption. Contrary to the finding of the district court, based upon this evidence the burden did not shift to Russell to affirmatively demonstrate that the requirements of the adoption statutes were met prior to the 1997 decree. On the record before us, Bridgens failed to meet her burden entitling her to summary judgment, and the district court erred in granting the motion.

Because this error requires reversal and remand for further proceedings, we do not reach Russell's remaining assignments of error.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings. For the benefit of the parties and the district court, we note that the legal issue of whether compliance with the statutory requirements of the Pennsylvania adoption act is an aspect of subject matter jurisdiction is an issue we view to be significantly dependent upon the Supreme Court of Pennsylvania's resolution of the pending appeals in *In re Adoption of R.B.F.*, 762 A.2d 739 (Pa. Super. 2000), and *In re Adoption of C.C.G.*, 762 A.2d 724 (Pa. Super. 2000).

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

GERRARD, J., concurring.

I agree with the majority's disposition of this appeal insofar as the court concludes that Pennsylvania law controls the question whether the Pennsylvania adoption decree is valid and that on the record presented, the district court erred in entering summary judgment for Joan C. Bridgens. I would, however, reverse the judgment of the district court based on my view that the Pennsylvania adoption decree was entered by a court with subject matter jurisdiction and is entitled to full faith and credit in Nebraska. I write separately, not because of a petty disagreement with the rationale of the majority opinion or as a mere intellectual exercise, but because the record reflects that the minor child's best interests have needlessly remained unaddressed while these proceedings continue on. The minor child affected by these proceedings has not had court-ordered visitation with

Serenna D. Russell (a primary caregiver in his life) for several months, nor have the custody or visitation issues been addressed as they should have.

Significantly, for the reasons that follow, I would also conclude that even if the Pennsylvania Court of Common Pleas erred in concluding that it had subject matter jurisdiction, under Pennsylvania law, the Court of Common Pleas' determination that all jurisdictional requirements had been satisfied is res judicata as to the parties to the adoption. Finally, I believe that the district court erred in excluding Russell's affidavit concerning her relationship with the minor child and in not considering the doctrine of in loco parentis at the summary judgment proceeding, as that doctrine provides a basis for Russell to proceed with this action regardless of the validity of the Pennsylvania adoption decree.

## SUBJECT MATTER JURISDICTION

U.S. Const. art. IV, § 1, provides that "Full Faith and Credit shall be given in each State to the Public Acts, Records, and judicial Proceedings of every other State." In order to fulfill this constitutional mandate, the judgment of a state court should have the same credit, validity, and effect in every other court of the United States, which it had in the state where it was pronounced. *Underwriters Assur. Co. v. N. C. Guaranty Assn.*, 455 U.S. 691, 102 S. Ct. 1357, 71 L. Ed. 2d 558 (1982).

There are, however, basic limitations on the principles of full faith and credit. *Id.* Chief among these limitations is the caveat that " 'a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment.' " *Id.* at 704. Consequently, before a court is bound by the judgment rendered in another state, it may inquire into the jurisdictional basis of the foreign court's decree. *Id.* If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given. *Id.*

For purposes of argument, I am assuming that under Pennsylvania law—at least, as that law currently stands—the Court of Common Pleas may have erred in entering the adoption decree at issue in this case. See, *In re Adoption of R.B.F.*, 762

A.2d 739 (Pa. Super. 2000), and *In re Adoption of C.C.G.*, 762 A.2d 724 (Pa. Super. 2000) (appeals granted at 566 Pa. 684, 784 A.2d 119 (2001)). However, the dispositive question in this appeal is whether Bridgens' failure to relinquish her parental rights prior to the purported adoption was fatal to the subject matter jurisdiction of the Pennsylvania court.

Jurisdiction of subject matter relates to the competence of a court to hear and determine controversies of the general nature of the action before the court. *Vendetti v. Schuster*, 418 Pa. 68, 208 A.2d 864 (1965). See, also, *Aronson v. Sprint Spectrum, L.P.*, 767 A.2d 564 (Pa. Super. 2001). The test of whether a court has jurisdiction over a particular controversy depends upon the competency of the court to determine controversies of the general class to which the case presented for consideration belonged—whether the court had power to enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in a particular case. *Com. v. Ct. of Common Pleas, Philadelphia Cty.*, 506 Pa. 410, 485 A.2d 755 (1984). See, also, *In re Jones & Laughlin Steel Corp.*, 488 Pa. 524, 412 A.2d 1099 (1980); *Kaelin v. University of Pittsburgh*, 421 Pa. 220, 218 A.2d 798 (1966); *Vendetti, supra*; *Aronson, supra*; *Dynamic Sports Fitness v. Community YMCA*, 768 A.2d 375 (Pa. Commw. 2001). The thing of chief importance on a question of jurisdiction over the subject matter is not whether the petitioner may recover in the particular forum on the cause of action pleaded but whether the court is empowered to hear and determine a controversy of the character involved. See *Kaelin, supra*.

It is plain that pursuant to the foregoing propositions, the Court of Common Pleas had subject matter jurisdiction to enter the adoption decree at issue. "The court of common pleas of each county shall exercise . . . original jurisdiction over voluntary relinquishment, involuntary termination and adoption proceedings." 23 Pa. Cons. Stat. Ann. § 2301 (West 2001).

> If satisfied that the statements made in the petition are true, that the needs and welfare of the person proposed to be adopted will be promoted by the adoption and that all requirements of this part have been met, the court shall enter a decree so finding and directing that the person proposed to be adopted shall have all the rights of a child and

heir of the adopting parent or parents and shall be subject to the duties of a child to him or them.

23 Pa. Cons. Stat. Ann. § 2902 (West 2001).

The Superior Court's decisions of *In re Adoption of R.B.F.,* *supra,* and *In re Adoption of C.C.G., supra,* are not to the contrary. Those cases were presented to the Superior Court as direct appeals from the Court of Common Pleas from denials of petitions for adoption. The Superior Court was not confronted with a collateral attack on a final adoption decree. In this case, the Court of Common Pleas had jurisdiction over adoption cases generally and entered a decree of adoption and that decree became a final judgment not subject to collateral attack on the ground of subject matter jurisdiction.

Bridgens relies on *List Adoption Case,* 418 Pa. 503, 508-09, 211 A.2d 870, 873-74 (1965), a case involving a petition to vacate a decree of adoption, in which the Pennsylvania Supreme Court stated:

> In determining this appeal certain principles of law must be kept in mind: (1) an adoption decree entered by a court having jurisdiction over the subject matter and the parties is generally immune from collateral attack, particularly where the record shows a substantial compliance with the adoption statute; (2) where the record in the adoption proceedings affirmatively reveals a lack of jurisdiction, then the adoption decree is subject to collateral attack; (3) notice to a natural parent of the adoption proceedings and the consent of a natural parent, where necessary, are jurisdictional prerequisites in an adoption proceeding; (4) when an adoption decree is collaterally attacked, the entry of the decree raises a presumption of its validity and regularity and an implication arises that the court did find the necessary facts and did perform all the steps essential to the jurisdiction of the court; (5) the burden is upon the person attacking an adoption decree to establish its invalidity by clear and convincing evidence.

The clear import of *List Adoption Case* is that a petition to vacate an adoption decree—in essence, a collateral attack—will be entertained where a natural parent has been unjustly deprived of parental rights. The rule established by *List Adoption Case,*

while couched in jurisdictional language, relates more to the power of a court to enter an adoption decree than to the subject matter jurisdiction of the court. See *Riedel v. Human Relations Com'n of Reading*, 559 Pa. 34, 739 A.2d 121 (1999) (distinguishing between jurisdiction and exercise of power). Consequently, biological parents whose parental rights have been terminated by operation of law may seek to have a decree of adoption vacated where the consent of the relinquishing biological parents was not properly obtained. See, e.g., *In re Fritz*, 460 Pa. 265, 333 A.2d 466 (1975); *Singer Adoption Case*, 457 Pa. 518, 326 A.2d 275 (1974). This does not compel the conclusion, however, that a parent whose parental rights have remained intact can compel the vacation of an adoption decree that has finally inured to the benefit of another party.

To the contrary, the Pennsylvania Supreme Court has specifically noted that

> " '[i]t is especially important that persons who adopt minor children may rely on the decree as some guarantee that, in addition to the child, they are not also adopting at some future time litigation whose goal is to extinguish the parent-child relationship and force the adoptive parents to relinquish the child upon whom they have showered care and affection.' "

*Matter of Adoption of Christopher P.*, 480 Pa. 79, 85, 389 A.2d 94, 97 (1978) (quoting *Adoption of Minor Child*, 109 R.I. 443, 287 A.2d 115 (1972)). Given this express principle, with which I agree, I cannot conclude that the Pennsylvania Supreme Court intended *List Adoption Case, supra*, to permit a collateral attack, under the circumstances of this case, on the evident subject matter jurisdiction of the Court of Common Pleas.

Because the record is sufficient to conclude, as a matter of law, that the Court of Common Pleas had subject matter jurisdiction to enter the adoption decree at issue, I would reverse the district court's order of summary judgment on that basis, and remand the cause to the district court for a determination of the merits of Russell's petition.

## RES JUDICATA

Even assuming that the Court of Common Pleas lacked subject matter jurisdiction because of the parties' failure to strictly

comply with the Pennsylvania adoption statutes, Bridgens cannot assert that argument in this proceeding. Under Pennsylvania law, jurisdictional determinations made in a prior proceeding are res judicata in a subsequent proceeding involving the same litigants.

Although a court may have no jurisdiction over a particular subject matter, it may have jurisdiction to determine the question of its own jurisdiction, and an unappealed final determination of its subject matter jurisdiction—albeit erroneous—is res judicata as to those litigants. *Com. ex rel. Cook v. Cook*, 303 Pa. Super. 61, 449 A.2d 577 (1982); *Connellsville T. S. v. Connellsville*, 14 Pa. Commw. 532, 322 A.2d 741 (1974). Accord *Chartiers Valley School Dist. v. Board*, 154 Pa. Commw. 81, 622 A.2d 420 (1993). See, e.g., *Drummond v. Drummond*, 414 Pa. 548, 200 A.2d 887 (1964); *Irwin Boro. S. D. v. N. Huntingdon Twp. S. D.*, 374 Pa. 134, 97 A.2d 96 (1953); *Federal Land Bank v. Putnam et al.*, 350 Pa. 533, 39 A.2d 586 (1944); *Bartron v. Northampton County*, 342 Pa. 163, 19 A.2d 263 (1941); *Chartiers Valley v. Bd. of Prop. Assessment*, 94 Pa. Commw. 4, 503 A.2d 66 (1985).

This principle, long recognized in the Commonwealth of Pennsylvania and other forums, reflects judicial concern for finality of judgments, even when said judgments have been rendered by a court without jurisdiction of the subject matter. *Com. ex rel. Cook, supra* (citing *United States v. Mine Workers*, 330 U.S. 258, 67 S. Ct. 677, 91 L. Ed. 884 (1947); *Chicot County Dist. v. Bank*, 308 U.S. 371, 60 S. Ct. 317, 84 L. Ed. 329 (1940); *Stoll v. Gottlieb*, 305 U.S. 165, 59 S. Ct. 134, 83 L. Ed. 104 (1938); *Hodge v. Hodge*, 621 F.2d 590 (3d Cir. 1980); *Dyndul v. Dyndul*, 620 F.2d 409 (3d Cir. 1980); *Bartron, supra*; *Strauss v. W. H. Strauss & Co., Inc.*, 328 Pa. 72, 194 A. 905 (1937); *Pulaski Avenue*, 220 Pa. 276, 69 A. 749 (1908); and *Kase v. Best*, 15 Pa. 101 (1850)).

> "[W]hen a court decides that it has jurisdiction in a case pending before it, its decision in favor of its own jurisdiction is res judicata and cannot be collaterally attacked. The court has jurisdiction to determine its own jurisdiction, and hence its decision on this point is valid even if erroneous. That decision may be reversed on appeal, but if not, it is res judicata, and the issue of that court's jurisdiction cannot again be questioned by the parties or their privies."

*Com. ex rel. Cook*, 303 Pa. Super. at 69, 449 A.2d at 581-82 (quoting Dan B. Dobbs, *The Validation of Void Judgments: The Bootstrap Principle, Part II—The Scope of Bootstrap*, 53 Va. L. Rev. 1241 (1967)). Thus, the principles of res judicata apply to questions of subject matter jurisdiction as well as to other issues, and such a judgment is entitled to full faith and credit even as to questions of jurisdiction. See, *Underwriters Assur. Co. v. N. C. Guaranty Assn.*, 455 U.S. 691, 102 S. Ct. 1357, 71 L. Ed. 2d 558 (1982); *Durfee v. Duke*, 375 U.S. 106, 84 S. Ct. 242, 11 L. Ed. 2d 186 (1963).

In the present case, Bridgens asserts that the adoption decree was entered without jurisdiction because all the requirements of the Pennsylvania adoption statutes were not met, i.e., the necessary consents were not filed with the adoption petition. The district court agreed with this argument as the basis for entering summary judgment. The adoption decree entered by the Court of Common Pleas, however, specifically sets forth the court's finding that "[a]ll requirements of the Acts of Assembly have been fulfilled and complied with." This determination—that the petition and filings fulfilled the requirements of the adoption statutes—may potentially have been in error, but was not appealed from and, under Pennsylvania law, is res judicata as to the parties.

In other words, Bridgens and Russell together invoked the jurisdiction of the court and received the decree they requested. Under these circumstances, Bridgens cannot now collaterally attack the jurisdiction of the court in the original proceeding. "[She] will not be permitted to 'blow hot and cold' by now taking a position inconsistent with that by which [she] previously induced" the entry of the adoption decree. See *Reese v. Reese*, 351 Pa. Super. 521, 527, 506 A.2d 471, 474 (1986).

While this broad principle admits to exceptions, none are present here. See *Connellsville T. S. v. Connellsville*, 14 Pa. Commw. 532, 322 A.2d 741 (1974). "In Pennsylvania, the courts have differentiated between jurisdictional determinations which are void on their face, i.e., where the want of jurisdiction is patent, and those where the determination is based upon extant jurisdictional facts, or merely an error of law, the unappealed determinations of which are binding." *Id.* at 537 n.4, 322 A.2d at 743 n.4. The

findings of the Court of Common Pleas in the instant case, even if erroneous, would clearly fall within the latter category and would be binding on the parties. Compare *Chartiers Valley School Dist. v. Board*, 154 Pa. Commw. 81, 622 A.2d 420 (1993) (want of jurisdiction patent where notice of appeal filed prior to trial court's jurisdictional determination).

Thus, even if we were to assume that subject matter jurisdiction was wanting, the Court of Common Pleas made a jurisdictional determination regarding compliance with the requirements of the "Acts of Assembly" and specifically foreclosed the argument Bridgens now seeks to advance. Under established principles of Pennsylvania law, the court's determination is res judicata, even if erroneous, and entitled to full faith and credit in the State of Nebraska.

## IN LOCO PARENTIS

Russell also assigned that the district court erred by not considering Russell's affidavit concerning her relationship with the minor child and in not discussing the doctrine of in loco parentis. Russell's assigned error has merit and should be considered on appeal. Discussion of this issue is essential because under the in loco parentis doctrine, as established by both Nebraska and Pennsylvania law, Russell can maintain her petition for custody even if the Pennsylvania adoption decree is not entitled to full faith and credit. The district court's order of summary judgment was premised on the assumption that the adoption issue was dispositive of the action. However, we have stated that

> a person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and *the rights, duties, and liabilities of such person are the same as those of the lawful parent.*

(Emphasis in original.) *Weinand v. Weinand*, 260 Neb. 146, 152-53, 616 N.W.2d 1, 6 (2000). Accord *T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913 (2001) (lesbian former partner of biological mother had standing, in loco parentis, to maintain complaint for custody and visitation against biological mother). See, also, *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002);

*State on behalf of Hopkins v. Batt,* 253 Neb. 852, 573 N.W.2d 425 (1998); *Hickenbottom v. Hickenbottom,* 239 Neb. 579, 477 N.W.2d 8 (1991); *Charles v. Stehlik,* 560 Pa. 334, 744 A.2d 1255 (2000), *cert. denied* 530 U.S. 1243, 120 S. Ct. 2689, 147 L. Ed. 2d 961.

The term "in loco parentis" refers to a person who has fully put himself or herself in the situation of a lawful parent by assuming *all* the obligations incident to the parental relationship and who actually discharges those obligations. *Weinand, supra.* Accord *T.B., supra.* The assumption of the parental relationship is largely a question of fact which should not lightly or hastily be inferred. *Weinand, supra.* The parental relationship should be found to exist only if the facts and circumstances show that the stepparent *means* to take the place of the lawful father or mother not only in providing support but also with reference to the natural parent's office of educating and instructing and caring for the general welfare of the child. *Id.* Once established, "[t]he rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child." *T.B.,* 567 Pa. at 229, 786 A.2d at 917.

Based on the foregoing principles, it is clear that resolution of the validity of the Pennsylvania adoption is not dispositive of Russell's petition. Russell can maintain her petition regardless of whether the Pennsylvania adoption decree is given full faith and credit, if Russell can demonstrate an in loco parentis relationship with the minor child. The fact that Russell affected an adoption of the minor child is, standing alone, persuasive evidence supporting the existence of an in loco parentis relationship between Russell and the minor child. Furthermore, Russell proffered evidence to support such a finding. Russell offered an affidavit which describes, in detail, Russell's activities in the role of "primary care provider for [the minor child] since [the minor child] was adopted at age 9 months." The district court determined that this affidavit was irrelevant because of the district court's resolution of the adoption issue.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *V.C. v. Casady,* 262 Neb. 714,

634 N.W.2d 798 (2001). Based on the applicability of the in loco parentis doctrine, evidence of Russell's relationship with the minor child is clearly of consequence to the determination of the action. The district court erred by excluding Russell's affidavit and by dismissing Russell's petition absent a determination of whether Russell stood in loco parentis to the minor child.

Moreover, in my view, the record establishes conclusively that there exists a material issue of fact with respect to Russell's in loco parentis relationship with the minor child. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Mondelli v. Kendel Homes Corp.*, 262 Neb. 263, 631 N.W.2d 846 (2001), *modified* 262 Neb. 663, 641 N.W.2d 624. If a genuine issue of material fact exists, summary judgment may not properly be entered. *McCarson v. McCarson*, 263 Neb. 534, 641 N.W.2d 62 (2002). Even if the Pennsylvania adoption decree is not entitled to full faith and credit, Russell is entitled to proceed to trial standing in loco parentis. This does not necessarily mean that Russell will prevail in seeking custody—but she at least has standing to fully litigate the issue. See *T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913 (2001).

At the very least, Russell's opportunity to litigate the issues of custody and visitation, pursuant to the doctrine of in loco parentis, should suggest to the district court that interim arrangements be made for the minor child's visitation with whichever party does not have temporary custody. So long as the ultimate disposition of this case remains uncertain, a temporary order of visitation should be entered that is consistent with the best interests of the child.

## CONCLUSION

Therefore, for substantially different reasons than the majority—in both import and impact on the best interests of the minor child—I concur only with the result (i.e., reversal of summary judgment).

WRIGHT, J., joins in this concurrence.