Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/15/2016 09:06 AM CDT

Roger Jerome Burnett, appellee, v. Jeffrey
Clyde Maddocks, appellant, and Opal
Maddocks et al., appellees.

___ N.W.2d ___

Filed July 15, 2016.    No. S-15-712.

1. **Equity: Quiet Title.** A quiet title action sounds in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations.
3. **Foreign Judgments: Jurisdiction: States.** Under the Full Faith and Credit Clause of art. IV, § 1, of the federal constitution, a judgment rendered in the court of a sister state which had jurisdiction has the same validity and effect in Nebraska as in the rendering state.
4. ____: ____: ____. The validity and effect of a judgment is determined with reference to the laws of the rendering state.
5. **Wills: Intent.** The cardinal rule in construing a will is to ascertain and effectuate the testator's intent if such intent is not contrary to the law.
6. ____: ____. A court must examine a will in its entirety, consider and liberally interpret every provision in the will, employ the generally accepted literal and grammatical meanings of words used in the will, and assume that the testator understood the words used in the will.
7. **Parent and Child: Words and Phrases.** The generally accepted meaning of the word "son" is a parent's male child.
8. **Wills: Parent and Child: Intent.** Stepchildren are generally not included in a devise to "children" unless the testator shows a different intent.

Appeal from the District Court for Pawnee County: Daniel E. Bryan, Jr., Judge. Reversed and remanded with directions.

Eugene L. Hillman, of Hillman, Forman, Childers & McCormack, for appellant.

Heather Voegele-Andersen and Brenda K. Smith, of Dvorak & Donovan Law Group, L.L.C., for appellee Roger Jerome Burnett.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, and Kelch, JJ.

Connolly, J.

## SUMMARY

Roger Jerome Burnett seeks to quiet title to a quarter section of farmland in Pawnee County, Nebraska (Property). He argues that he owns the Property because he is the "eldest son" of Merrill Maddocks under the will of Merrill's great-uncle. In 2006, a Colorado court entered a decree for adult adoption which made Burnett, then 58 years old, Merrill's heir under the intestacy laws. The trial court quieted title to the Property in Burnett.

Jeffrey Clyde Maddocks, the person who takes the Property if Burnett is not Merrill's "eldest son," appeals. We conclude that Burnett is not Merrill's "son" under the will because he lacked a parent-child relationship with Merrill. We reverse, and remand with directions to quiet title to the Property in Jeffrey.

## BACKGROUND

Charles W. Maddocks died in 1938. His will directed the executor to reduce certain assets to cash and purchase a farm selected by Charles' nephew, A. Walter Maddocks (Walter). Item 7(b) of the will provided:

I give and bequeath to my said nephew, A. WALTER MADDOCKS, a life estate for the term of his natural life in and to the . . . farm so purchased, and at his death I give and bequeath to MERRILL MADDOCKS, a son of said A. Walter Maddocks, a life estate for the term of the natural life of said Merrill Maddocks, in and to said . . . farm, with remainder over at his death to his eldest son, in fee simple; or, if said Merrill Maddocks shall

leave no son surviving, then with remainder over in fee simple to the eldest grand-son in the male line of said A. Walter Maddocks, then living; or, if there is then living no grand-son, in the male line of descent, of said A. Walter Maddocks, then with remainder over to the surviving heirs at law of said A. Walter Maddocks . . . .

The county court for Pawnee County admitted Charles' will for probate.

A few years later, the executor of Charles' estate bought the Property. The deed quoted part of item 7(b) of Charles' will and stated that Walter had selected the Property. The deed further stated that the parties intended that "title to the premises herein and hereby conveyed shall vest in the grantees strictly in the manner provided by said last will and testament."

Walter died in 1977. His grandson, Jeffrey, survived him. Burnett stipulated that, at Walter's death, Jeffrey was "the eldest grand-son in the male line of said A. Walter Maddocks, then living."

In 1988, Burnett's mother married Merrill. In 2006, a Colorado court entered a decree for adult adoption under which Merrill adopted Burnett as his adult "heir at law." As a legal term of art, "heir" means one who receives an intestate decedent's property.[1] And, as discussed below, the only effect of the decree was to make Burnett the heir of Merrill for intestate succession.

In 2014, Merrill died. He did not leave any surviving children.

After Merrill died, Burnett filed a complaint to quiet title to the Property in him. Burnett alleged that the Property was his because he was Merrill's "eldest son" under Charles' will.

Jeffrey was the only defendant who answered. He alleged the Property passed to him under Charles' will because he was the eldest grandson in Walter's male line. Jeffrey argued

---

[1] See Black's Law Dictionary 839 (10th ed. 2014).

that Burnett was not Merrill's "eldest son" under the will because "it was not legally possible to adopt an adult" in Nebraska when Charles died. Jeffrey alleged a counterclaim against Burnett and a cross-claim against the other defendants seeking to quiet title to the Property in him.

In its decree, the court quieted title to the Property in Burnett and dismissed Jeffrey's counterclaim and cross-claim. It stated that Burnett was Merrill's "eldest son" because the Colorado decree was entitled to full faith and credit in Nebraska.

Jeffrey appeals. We note that neither he nor Burnett informed the trial court of what effect the decree for adult adoption had under Colorado law. We asked the parties to submit supplemental briefs on that issue.

## ASSIGNMENTS OF ERROR

Jeffrey assigns, restated, that the court erred by (1) quieting title in Burnett and (2) not quieting title in Jeffrey.

## STANDARD OF REVIEW

[1,2] A quiet title action sounds in equity.[2] On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations.[3]

## ANALYSIS

Jeffrey argues that Charles, the testator, did not intend the "eldest son" of Merrill to include an adult man whom Merrill adopted in 2006. Jeffrey notes that Nebraska did not allow stepparents to adopt their adult stepchildren until 1984.[4] So he argues that Charles would not have contemplated Merrill's adopting an adult "son" when Charles died in 1938.

This is not the first case to challenge an adult adoptee's status under the will of a testator who died before Nebraska

---

[2] *Schellhorn v. Schmieding*, 288 Neb. 647, 851 N.W.2d 67 (2014).

[3] *Id.*

[4] See 1984 Neb. Laws, L.B. 510, § 1.

permitted adult adoption. We held in *Satterfield v. Bonyhady*[5] that a person adopted as an adult by her stepfather was her stepfather's "child" under a will executed by a testator who died before Nebraska allowed adult adoption. We emphasized that adoption under Nebraska law, whether the adoptee is a child or an adult, creates the "usual relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent."[6] In *Satterfield*, the stepfather adopted his stepdaughter in Nebraska.

[3,4] Merrill did not adopt Burnett in Nebraska. Instead, he adopted Burnett as his "heir at law" in a decree entered by a Colorado court. Under the Full Faith and Credit Clause of art. IV, § 1, of the federal constitution, a judgment—including an adoption decree—rendered in the court of a sister state which had jurisdiction has the same validity and effect in Nebraska as in the rendering state.[7] And we determine the validity and effect of a judgment with reference to the laws of the rendering state.[8]

So we must look to Colorado law to determine the effect of the Colorado decree. Under title 19, article 5, of the Colorado Revised Statutes, a child under 18 years of age or, with the court's approval, an adult who is 18, 19, or 20 years old may be "adopted as a child."[9] A person so adopted becomes, "to all intents and purposes, the child of the petitioner" and is entitled to all the rights and privileges and subject to all the obligations of a child born in lawful wedlock to

---

[5] *Satterfield v. Bonyhady*, 233 Neb. 513, 446 N.W.2d 214 (1989).

[6] Neb. Rev. Stat. § 43-110 (Reissue 2008).

[7] *In re Trust Created by Nixon*, 277 Neb. 546, 763 N.W.2d 404 (2009), citing *Russell v. Bridgens*, 264 Neb. 217, 647 N.W.2d 56 (2002).

[8] See, *Russell v. Bridgens, supra* note 7; *Susan H. v. Keith L.*, 259 Neb. 322, 609 N.W.2d 659 (2000); *Gruenewald v. Waara*, 229 Neb. 619, 428 N.W.2d 210 (1988); 50 C.J.S. *Judgments* § 1278 (2009).

[9] See Colo. Rev. Stat. Ann. § 19-5-201 (West 2016).

the petitioner.[10] Conversely, the legal rights and obligations between the adoptee and the adoptee's biological parents are severed.[11]

But the parties agree that Merrill did not adopt Burnett under title 19, article 5. Instead, he adopted Burnett under Colo. Rev. Stat. Ann. § 14-1-101 (West 2016). Section 14-1-101 allows a person to "adopt an adult as [an] heir at law" by petitioning for a decree "declaring [the adult] the heir at law of the petitioner and entitled to inherit from the petitioner any property in all respects as if such adopted person had been the petitioner's child born in lawful wedlock."

Under Colorado law, the "legal effects of adult adoption are quite different from those flowing from adoption of a child."[12] More specifically, the effects of adult adoption are relatively minor:

> No obligation whatsoever is placed upon the person adopted with respect to the adoptive parent. He is granted no rights whatever, other than the acquisition of an heir at law, who may or may not even bear his name. It is merely a means of giving effect to a personal transaction mutually agreeable between two adults. No rights of the natural parents of the person adopted are taken from them, or even mentioned, where the purpose of the adoption is to acquire an adult "heir at law."[13]

A decree for adult adoption "does not have the power to affect the interests determined by an express disposition."[14] Section

---

[10] Colo. Rev. Stat. Ann. § 19-5-211(1) (West 2005).

[11] § 19-5-211(2).

[12] *Matter of Trust Created by Belgard*, 829 P.2d 457, 459 (Colo. App. 1991).

[13] *Martin v. Cuellar*, 131 Colo. 117, 122, 279 P.2d 843, 845 (1955). See, *In re P.A.L.*, 5 P.3d 390 (Colo. App. 2000); *Herrera v. Glau*, 772 P.2d 682 (Colo. App. 1989).

[14] *Matter of Trust Created by Belgard, supra* note 12, 829 P.2d at 460.

14-1-101 has the "express purpose of making one an intestate heir of the adopting person."[15]

So, giving the decree for adult adoption the same effect it has in Colorado, Burnett is entitled to inherit from Merrill as if he were Merrill's child born in lawful wedlock for intestate succession. Does that make him Merrill's "son" under Charles' will? In a similar case, a California court held that the settlor did not intend the word "issue" to include adults adopted in Colorado under § 14-1-101. In *Ehrenclou v. MacDonald*,[16] the settlor made his daughter, Jacqueline Wolber (Jacqueline), a life beneficiary of a trust. On Jacqueline's death, the trustees were to distribute the assets to her "'living lawful issue.'"[17] Jacqueline had two biological children, and she adopted two adults—Steven MacDonald (Steven) and Cynthia Hutt (Cynthia)—as her heirs at law in Colorado under § 14-1-101. After Jacqueline died, her biological children sought a declaration that they were her only "living lawful issue."

The court said that whether Steven and Cynthia were Jacqueline's "living lawful issue" depended on whether they had the "*status* of being Jacqueline's children with all the rights and duties between them as parent and child."[18] Their status, in turn, depended on the legal relationship between Jacqueline and Steven and Cynthia under Colorado law.

The court concluded that the relationship between Jacqueline and her adopted adult heirs was something decidedly less than the relationship between a parent and her children:

> The status conferred by a Colorado adult "adoption" is that of "heir at law." Nothing more. Nothing less. Thus, although the adopted person gains the right to inherit

---

[15] *Id.* at 459.

[16] *Ehrenclou v. MacDonald*, 117 Cal. App. 4th 364, 12 Cal. Rptr. 3d 411 (2004).

[17] *Id.* at 367, 12 Cal. Rptr. 3d at 413.

[18] *Id.* at 373, 12 Cal. Rptr. 3d at 417 (emphasis in original).

from the adopting person, the adopting person does not gain such a right from the adopted person. And the "adoption" does not sever the parent-child relationship between the adopted person and his or her natural parents. The adopted person retains all the rights and duties as the child of the natural parents, including the right to inherit from them as their heir at law.[19]

Because Steven and Cynthia did not have a parent-child relationship with Jacqueline, the court determined that the settlor would not have considered them Jacqueline's "living lawful issue."

We likewise conclude that the Colorado decree did not create a parent-child relationship between Merrill and Burnett. There is more to being a parent than serving as a medium through which property passes to an heir under the laws of intestate succession. The critical point is not that Colorado might define the parent-child relationship differently than Nebraska, but that Colorado extends the relationship to one class of adoptees and not to another.[20] Burnett is a member of the latter class.

Burnett argues that the effect of the decree under Colorado law is irrelevant. He cites *In re Trust Created by Nixon*,[21] in which we held that an adult adopted in California was the adopting person's "child" under a will which stated that "'issue'" included "'persons legally adopted.'" Our focus in *In re Trust Created by Nixon* was whether the adoption decree violated Nebraska's public policy. We concluded that the decree was not contrary to our public policy and was therefore entitled to full faith and credit. Burnett correctly

---

[19] *Id.* at 374, 12 Cal. Rptr. 3d at 419.

[20] See *Sanders v. Yanez*, 238 Cal. App. 4th 1466, 190 Cal. Rptr. 3d 495 (2015).

[21] *In re Trust Created by Nixon, supra* note 7, 277 Neb. at 553, 546 N.W.2d at 410.

notes that we did not belabor the effect of the decree under California law.

But this case shows that we cannot assume that any foreign decree with "adoption" in its title has the same effect as an adoption decree entered by a Nebraska court. Not all "adoption" decrees are equal. As we said in *In re Trust Created by Nixon*, a foreign adoption decree has "the *same* validity and effect in Nebraska as in *the state rendering judgment*."[22] A foreign judgement is not entitled to *greater* effect in Nebraska than it would have in the rendering state.[23]

[5,6] Now we reach the ultimate question in this case: Did Charles intend the "eldest son" of Merrill to include a man who lacked a parent-child relationship with Merrill but is treated as if he was Merrill's child for intestate succession? The cardinal rule in construing a will is to ascertain and effectuate the testator's intent if such intent is not contrary to the law.[24] A court must examine the will in its entirety, consider and liberally interpret every provision in the will, employ the generally accepted literal and grammatical meanings of words used in the will, and assume that the testator understood the words used in the will.[25]

[7,8] We conclude that Burnett is not Merrill's "eldest son" under item 7(b) of Charles' will. From the execution of the will to the present, the word "son" has referred to a parent's male child.[26] The will does not show Charles' intent to depart

---

[22] *Id.* at 550, 546 N.W.2d at 408 (emphasis supplied).

[23] 50 C.J.S., *supra* note 8.

[24] *In re Estate of Mousel*, 271 Neb. 628, 715 N.W.2d 490 (2006).

[25] *Id.*

[26] The New Oxford American Dictionary 1625 (2001); Webster's Encyclopedic Unabridged Dictionary of the English Language 1356 (1989); Webster's Third New International Dictionary of the English Language, Unabridged 2172 (1981); Webster's New International Dictionary of the English Language 2397 (2d ed. 1943).

from this generally accepted meaning. The Colorado decree did not create a parent-child relationship between Merrill and Burnett, so Burnett is not Merrill's male child. Nor does Burnett's status as Merrill's stepson make him Merrill's "son" under item 7(b). Stepchildren are generally not included in a devise to "children," and nothing in the will suggests that Charles had a different intent.[27]

Burnett and Jeffrey stipulated that, other than Burnett, Merrill did not have a surviving son. They also stipulated that Jeffrey was the "eldest grand-son in the male line of said A. Walter Maddocks" when Walter died in 1977. Jeffrey's allegation that he was the eldest grandson in Walter's male line living when Merrill died was not contested by Burnett or any of Jeffrey's codefendants. We determine that Merrill did not leave a surviving son and that Jeffrey was the eldest grandson in Walter's male line when Merrill died. So, the Property passed to Jeffrey under Charles' will.

## CONCLUSION

Because Merrill and Burnett did not have a parent-child relationship, Burnett was not Merrill's "eldest son" under item 7(b) of Charles's will. Merrill did not leave a surviving son, so the Property passes to the eldest grandson in Walter's male line. That person is Jeffrey. We therefore reverse, and remand with directions to quiet title to the Property in Jeffrey.

REVERSED AND REMANDED WITH DIRECTIONS.

STACY, J., participating on briefs.

---

[27] See, 80 Am. Jur. 2d *Wills* § 1037 (2013); 96 C.J.S. *Wills* § 1032 (2011); 4 William J. Bowe & Douglas H. Parker, Page on the Law of Wills § 34.17 (rev. ed. 1961).