IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

WISNER V. VANDELAY INVESTMENTS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ROBIN J. WISNER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF
GLADYS P. WISNER, DECEASED, APPELLANT,

V.

VANDELAY INVESTMENTS, L.L.C., A NEBRASKA LIMITED
LIABILITY COMPANY, ET AL., APPELLEES.

Filed May 30, 2017.    No. A-16-451.

Appeal from the District Court for Lincoln County: RICHARD A. BIRCH, Judge. Reversed and remanded for further proceedings.

David Pederson, of Pederson & Troshynski, for appellant.

Robert S. Lannin, of Shively & Lannin, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

INBODY, Judge.

### INTRODUCTION

Robin J. Wisner, personal representative of the estate of Gladys P. Wisner, appeals the decision of the Lincoln County District Court quieting title of certain real property in favor of Vandelay Investments, L.L.C. (Vandelay).

### STATEMENT OF FACTS

This case involves a complaint to set aside a treasurer's tax deed issued by the Lincoln County Treasurer to Vandelay on September 10, 2014; a request to allow Robin to redeem the real property; and a request to quiet title in the real property. The case was originally brought by Gladys by and through her power of attorney, her son Robin. After Gladys, who was 99 years old, passed

- 1 -

away on November 8, 2015, Gladys' estate, by and through her personal representative Robin, was substituted as the party plaintiff in the district court action. The complaint alleged that Gladys was entitled to recover the real property because Vandelay failed to comply with the notice and publication requirements relating to treasurer's tax deeds; that Gladys was at all relevant times affected by a mental disorder and was entitled to redeem the real property at any time within five years of the tax sale pursuant to Neb. Rev. Stat. § 77-1827 (Reissue 2009); and that, on or before October 3, 2014, the taxes on the real property were redeemed in full, with interest and penalties, but Vandelay refused to respond to the redemption or to convey the property back to Gladys. Vandelay filed an answer denying the allegations contained in the complaint and filed a counterclaim seeking to quiet title to the real property in its favor.

The real property involved is a farm located about nine miles southeast of North Platte and is legally described as follows: "The North Half (N1/2) and the North Half of the South Half (N1/2S1/2) of Section Twenty-Nine (29), Township 13 (13) North, Range Twenty-Nine (29) West of the 6th P.M., Lincoln County, Nebraska." The property includes several acres in "the homestead" where a house was located and approximately 480 acres consisting of rangeland and 179.57 acres of irrigated cropland. The real property has an assessed value of around $986,000.

Gladys and her husband began residing on the property and farming the property in 1949. After inheriting the property from Gladys' father in 1971, Gladys and her husband owned the property until his death on November 9, 2007. After the death of Gladys' husband, Gladys' youngest son, Roger, handled the administration of the farm, which had been leased out since 1976, including paying the real estate taxes. Roger also took care of Gladys, including taking her to doctors' appointments, as Gladys voluntarily stopped driving in 2006 because her new car "had too many gadgets" and she could not "figure them out." Further, although Robin was appointed Gladys' power of attorney in 2008, he did not need to use the power of attorney because Roger was taking care of Gladys' finances. Gladys continued to reside on the property until March 2009, when Roger died unexpectedly, and Gladys could not remain at the farm by herself. At that time, Gladys' family moved her to the Centennial Park Retirement Village in North Platte.

Gladys' son Robin was her power of attorney; however, due to the fact that he lived in Iowa, he arranged for the First National Bank Trust Department to review Gladys' trust and to pay all of Gladys' monthly bills, such as her telephone bill, newspaper subscription, health insurance and her charges from Centennial Park. At the end of a meeting with First National Bank employees, including trust officer Norma Pinkerton, Robin and his siblings felt that all Gladys' business and financial matters were covered "except for what might come in for her personal needs." At trial, Robin specifically testified that he believed that First National was taking care of the real estate taxes. He further testified at trial that Gladys never mentioned anything about the property's real estate taxes, he never saw any tax statements, delinquency notices, or other documents related to real estate taxes when he visited Gladys, even though Gladys tended to keep things and pack them away, and he was never aware of any issues with real estate taxes.

Pinkerton testified by deposition that First National Bank became involved in assisting Gladys following the death of her husband in 2009. She testified that Robin directed the bank to pay Gladys' bills that he wanted them to pay. According to Pinkerton, First National Bank was never involved in paying real estate taxes on land owned by Gladys and Pinkerton did not recall

seeing or receiving any notices regarding real estate taxes on land owned by Gladys. Pinkerton testified that there has never been a shortage of funds to pay Gladys' bills and she first became aware of the issue of Gladys' real estate taxes not being paid when Gladys' attorneys notified her. After receiving the notification that Gladys' real estate taxes were not being paid, Pinkerton checked to see if there was any information that was overlooked regarding paying these taxes and she testified there was not.

Beginning in 2009, when Gladys was moved to Centennial Park Retirement Village, Gladys did not pay real estate taxes on the property as they came due. On March 9, 2011, the Lincoln County Treasurer sold a tax sale certificate on the real estate at issue to Acron Business Services, Inc., which subsequently paid the delinquent real estate taxes of $8,276.65. On February 18, 2014, Vandelay purchased the tax sale certificate from Acron. On March 25, Vandelay began the process of obtaining a tax deed. Initially, Vandelay sent notice of its intent to apply for a treasurer's tax deed to Gladys by certified mail, which was returned as "unclaimed." Then, in May 2014, Vandelay published notice of its intent to apply for a treasurer's tax deed in the Sutherland, Nebraska newspaper for three consecutive weeks. After the publication began in the newspaper, Vandelay sent a copy of the notice to Gladys via first class mail to her address at 510 Centennial Circle #306 in North Platte, Nebraska. This first class mailing was not returned to Vandelay. The process eventually culminated in a treasurer's tax deed being issued to Vandelay on September 10, and filed with the register of deeds on September 15.

Shortly after the tax deed was filed, Robin was contacted by the farm tenant who advised him that it was his understanding that a deed had been issued to the real property in favor of Vandelay. Robin, as power of attorney, then investigated and determined that a tax deed had been filed, and attempted to redeem the tax sale certificate on Gladys' behalf. Those efforts were rejected by Vandelay leading to the filing of the complaint against Vandelay.

At the trial held on February 25, 2016, there was substantial testimony concerning Gladys' mental status. Additionally, Randy James, one of the owners of Vandelay, testified regarding the attempted service on Gladys:

> The county assessor and the county treasurer's records both included the address on Centennial Circle, Unit 306. Also I had printed a newspaper article previous to the sending of this notice which confirmed that in my mind. So when this notice would've been sent out and returned as unclaimed, the envelope which is included in the exhibit, to me the unclaimed indicates that, in fact, [Gladys] is located at that property but it just wasn't signed for, otherwise the post office will use vacant, not deliverable as addressed, person not, you know, located there. So based on that information then, I moved to publication, because I did not believe there was another address to obtain service on that.

James testified that the newspaper article indicated that Gladys did, in fact, live at Centennial Circle and referenced that she played bridge with members of the community regularly.

On April 22, 2016, the district court found that Vandelay had complied with the statutory requirements for notice and publication and that Robin had not met his burden of proving that he was entitled to redeem the real estate. Specifically, the court found that Robin failed to meet his burden of proving that Gladys had a mental disorder within the meaning of § 77-1827 which would

extend the redemption period in this case to five years. Thus, the district court entered judgment quieting title in favor of Vandelay.

## ASSIGNMENTS OF ERROR

The appellant contends the district court erred in (1) finding that Vandelay had complied with the requirements of Nebraska statutes relating to Treasurer's Tax Deeds, specifically with regard to the issues of proper notice and publication under Neb. Rev. Stat. § 77-1834 (Reissue 2009); (2) in finding that the appellant did not meet its burden of proving that Gladys was suffering from a mental disorder within the meaning of § 77-1827; and (3) in failing to use its equitable authority to remedy a situation which is contrary to the principles of fairness and equity.

## STANDARD OF REVIEW

A quiet title action sounds in equity. *Burnett v. Maddocks*, 294 Neb. 152, 881 N.W.2d 185 (2016). On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations. *Id.*

## ANALYSIS

Robin contends the district court erred in finding that Vandelay had complied with the requirements of Nebraska statutes relating to Treasurer's Tax Deeds, specifically with regard to the issues of proper notice and publication under § 77-1834.

Neb. Rev. Stat. § 77-1837.01 (Cum. Supp. 2016) provides that tax sale certificates sold and issued between January 1, 2010, and December 31, 2014, are governed by statutes in effect on December 31, 2009. Since the certificate at issue was sold in 2011, it is those prior statutes which govern this transaction.

Neb. Rev. Stat. § 77-1831 (Reissue 2009) provides:

> No purchaser at any sale for taxes or his or her assignees shall be entitled to a deed from the treasurer for the real property so purchased unless such purchaser or assignee, at least three months before applying for the deed, serves or causes to be served a notice stating when such purchaser purchased the real property, the description thereof, in whose name assessed, for what year taxed or specially assessed, and that after the expiration of three months from the date of service of such notice the deed will be applied for.

Neb. Rev. Stat. § 77-1832 (Reissue 2009) provides:

> Service of the notice provided by section 77-1831 shall be made by certified mail, return receipt requested, upon the person in whose name the title to the real property appears of record to the address where the property tax statement was mailed and upon every encumbrancer of record in the office of the register of deeds of the county. Whenever the record of a lien shows the post office address of the lienholder, notice shall be sent by certified mail, return receipt requested, to the holder of such lien at the address appearing of record.

In the instant case, Vandelay sent notice of its intent to apply for a treasurer's tax deed to Gladys by certified mail, which was returned as "unclaimed." Vandelay then published notice of its intent to apply for a treasurer's tax deed in the Sutherland, Nebraska newspaper. However, pursuant to § 77-1834 notice by publication is only allowed

> If the person in whose name the title to the real property appears of record in the office of the register of deeds in the county or if the encumbrancer in whose name an encumbrance on the real property appears of record in the office of the register of deeds in the county cannot, upon diligent inquiry, be found. . . .

Since Vandelay knew Gladys' address and where she could be found, they could not meet the requirements for notice by publication. Consequently, Vandelay never completed service of a notice upon Gladys and Gladys was entitled to recover the real property because Vandelay failed to comply with the notice requirements relating to treasurer's tax deeds. Thus, we reverse and remand for further proceedings.

Having determined that this cause must be reversed and remanded, we need not consider Robin's other assignments of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *In re Conservatorship of Abbott*, 295 Neb. 510, 890 N.W.2d 469 (2017).

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.