IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ODK CAPITAL V. PAW SPA PET RESORT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ODK CAPITAL, LLC, APPELLEE,

V.

THE PAW SPA PET RESORT, LLC, AND KEVIN IRISH, APPELLANTS.

Filed January 13, 2026.    No. A-24-945.

Appeal from the District Court for Douglas County: LEANNE M. SRB, Judge. Affirmed.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellant The Paw Spa Pet Resort.

Bonnie M. Boryca and Raymond E. Walden of Erickson | Sederstrom, P.C., for appellee.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

## I. INTRODUCTION

The Paw Spa Resort, LLC (Paw Spa), appeals from the order of the district court for Douglas County, which denied its motion to quash and vacate filed in a garnishment proceeding. In its motion, Paw Spa sought to collaterally attack a Utah default judgment obtained against it and Kevin Irish by ODK Capital, LLC (ODK), claiming, among other things, that the Utah court lacked personal jurisdiction to enter judgment against it. The district court rejected Paw Spa's arguments and denied the motion to quash and vacate. Paw Spa appeals. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

In October 2023, ODK obtained a default judgment against Paw Spa and Irish in Utah for $86,071.07, plus interest. The default judgment stated that Paw Spa and Irish had been served

"pursuant to Rule 4(d)(1)" but that they had "failed to appear or otherwise defend" in the Utah court. On August 15, 2024, ODK submitted the Utah judgment for filing in the Douglas County District Court pursuant to Neb. Rev. Stat. § 25-1587.03 (Reissue 2016) of the Nebraska Uniform Enforcement of Foreign Judgments Act (NUEFJA). Neb. Rev. Stat. §§ 25-1587.01 to 25-1587.09 (Reissue 2016 & Cum. Supp. 2024). Also on August 15, the deputy clerk of the district court filed a notice of the filing of the Utah judgment, identifying Paw Spa as a judgment debtor, noting Paw Spa's address, and stating that the notice was mailed to Paw Spa on that date. A separate notice was filed with respect to Irish. The record does not show that Irish appeared or participated in the garnishment proceedings that followed.

On October 4, 2024, ODK filed an affidavit and praecipe for summons in garnishment in aid of execution, stating in the affidavit that ODK had recovered a judgment against Paw Spa and Irish, and that the total amount due was $90,664.85 (judgment plus interest and costs). The garnishee identified in the affidavit as having property of and being indebted to "the judgment debtor" was a bank located in Omaha, Nebraska. The response to ODK's interrogatories subsequently filed by the bank indicated that the bank was holding "money or credits" for Paw Spa in the amount of $60,002.75. The clerk of the district court issued the summons and order of garnishment in aid of execution on October 4 to be sent by certified mail.

On October 18, 2024, Paw Spa filed a motion seeking to quash the summons and order of garnishment and to vacate the Utah judgment. In its motion, Paw Spa claimed that the Utah court lacked personal jurisdiction to enter a judgment against it. Paw Spa also alleged, among other things, that ODK did not properly serve Paw Spa in the Utah litigation.

The district court heard Paw Spa's motion on November 4, 2024. The court heard testimony from Sheila Irish, also known as Sheila Kusmierski (referred to herein as "Kusmierski"), the "sole managing member" of Paw Spa. The court also received an affidavit of Kusmierski (filed prior to the hearing) and an affidavit of Catherine Pugh (ODK's records custodian), both with certain attached exhibits; a complaint and answer from a different case filed by an individual in the district court in 2020, against Paw Spa, Irish, and Kusmierski; paperwork received by Kusmierski notifying her of the garnishment proceedings; and the bank's response to ODK's interrogatories. The court made certain findings about one of the attachments to Kusmierski's affidavit, which we detail in our summation of the hearing evidence, and we discuss Paw Spa's objections to Pugh's affidavit in the analysis section below. The court took judicial notice of Paw Spa's motion to quash and the notice of filing the foreign judgment (specifically the notice identifying Paw Spa as a judgment debtor), both of which were marked as exhibits and included in the bill of exceptions. At the close of the hearing, the court gave both parties leave to submit briefs and/or proposed orders.

In her affidavit, Pugh stated that she is the custodian of records for ODK, a limited liability company located in Utah, and that through her duties she is familiar with how ODK makes and maintains its normal business books and records. Pugh noted certain records attached to her affidavit and which related to "the account at issue." Specifically, she noted the business loan and security agreement (BLSA), which she asserted "Defendants" entered into on January 3, 2023; a supplement to the BLSA; and the "transaction history" for the BLSA. Pugh stated that these records were made at or near the time of the reflected transactions by someone with knowledge of the acts and events; by a computer or other similar digital means that contemporaneously records

an event as it occurs; or from information provided by someone with knowledge of the activity and transactions reflected in such records. She also stated that the records were kept during ODK's regularly conducted business activity and that it was ODK's regular practice to make such records. Pugh then noted certain provisions of the attached documents, which we describe more fully below. Pugh concluded by stating, "Upon the defendants' failure to make the required payments under the BLSA, ODK filed suit against the defendants in the Third District Court, Salt Lake County, Utah."

The BLSA supplement attached to Pugh's affidavit identifies Paw Spa as the "Borrower" and ODK as the "Lender." It shows a loan amount of $65,000 (with $64,187.50 disbursed after an origination fee was deducted), "Interest Expense" of $27,299.74, and a total repayment amount of $92,299.74. It shows a weekly payment amount of $1,183.33.

The BLSA defines "Borrower" to mean "the Borrower identified on the signature page" and states that the BLSA, the supplement, and an authorization agreement for direct deposit and direct payments govern the borrower's "business loan . . . from ODK." The BLSA includes a "PROMISE TO PAY" provision, which states, "Borrower agrees to pay the Total Repayment Amount shown in the accompanying [BLSA] Supplement in accordance with the Payment Schedule shown in the [BLSA] Supplement" through "Direct Payments (ACH Debits)." The BLSA provided, "For purposes of the execution of this Agreement, signatures delivered by electronic or fax transmission shall be treated in all respects as original signatures." In the "CERTIFICATION AND SIGNATURES" section, it stated:

> By executing this Agreement or authorizing the person signing or affirming below to execute on its behalf, Borrower certifies that Borrower has received a copy of this Agreement and that Borrower has read, understood and agreed to be bound by its terms. Each person signing or affirming below certifies that each person is signing on behalf of the Borrower and/or in the capacity indicated below the signer's name (and if Borrower is a sole proprietorship, in the capacity of the owner of such sole proprietorship) and that such signer is authorized to execute this Agreement on behalf of or the in [sic] stated relation to Borrower.

The "Signature Page," which identifies the borrower as "THE PAW SPA PET RESORT, LLC," was electronically signed by "KEVIN IRISH" on January 3, 2023. It was also electronically signed by "KEVIN IRISH" as "Guarantor #1." The signature page includes a box "For Lender's Use Only," which states that the agreement "has been received and accepted by Lender in Utah after being signed by Borrower and any Guarantor(s)." The signature space in that box bears the electronic signature "Adrian Ropisan," also dated January 3.

Additionally, we note that the BLSA includes a forum selection clause, which provided (subject to an arbitration provision of the agreement):

> Borrower, Guarantors and Lender agree that any action or proceeding to enforce or arising out of this Agreement may be brought in any court of the State of Utah or in the United States District Court for the District of Utah, and Borrower and Guarantors waive personal service of process. Borrower, Guarantors and Lender agree that venue is proper in such courts.

The "GOVERNING LAW" section of the BLSA provided, again subject to the arbitration provision of the agreement, that the agreement and any claim arising out of it were governed by applicable federal law, and Utah law to the extent not preempted by federal law. That provision also stated the borrower's understanding and agreement that the lender was located in Utah, that it made all credit decisions from its office in Utah, that the loan was made in Utah, and that borrower's payments were not accepted until received by the lender in Utah.

The authorization agreement for direct deposits and direct payments appears just before the BLSA signature page. There is a separate signature page for the authorization agreement, which was electronically filled in with a routing number, account number, and tax ID number and was also electronically signed by Irish on January 3, 2023. There is nothing in the authorization agreement or its signature page (or elsewhere in the record) identifying the name of the bank selected for direct deposits and payments.

The final attachment to Pugh's affidavit was the "TRANSACTION HISTORY" for Paw Spa showing weekly loan payments of $1,183.33 were made from January 10, 2023, to March 7. It shows a "Payment Error" for the March 14 payment with no further payments, leaving a remaining balance of $81,649.77 as of April 17.

In Kusmierski's affidavit, she identified herself as the managing member and sole owner of Paw Spa, which was created in 2012. Kusmierski denied that Paw Spa had ever conducted business in Utah. She stated that she was never served in the Utah case, either as the registered agent and managing member for Paw Spa or personally. Kusmierski stated that she was the only person authorized to accept service for Paw Spa and that Irish had never been the registered agent for Paw Spa. Kusmierski also stated that she was the only person with authority to pledge assets or enter into contracts on behalf of Paw Spa; that she never signed any documentation obligating Paw Spa to any indebtedness with ODK; that she never reviewed or approved any paperwork between ODK and Paw Spa; and that she never saw any of the documents attached to Pugh's affidavit until she saw the affidavit on October 31, 2024. Finally, she stated that she did not agree, and would never have agreed, to a loan with the interest charge reflected in the BLSA. The attachments to Kusmierski's affidavit included certain documents filed with the Nebraska Secretary of State, including Paw Spa's certificate of organization, which showed the street and mailing address for Paw Spa's "designated office" and identified her as Paw Spa's "registered agent" at that same address.

Kusmierski's testimony at the hearing reflects, generally, that she never authorized any loan with ODK; that Irish had no authority to do so; and that she was not aware of the loan, the Utah court proceedings, or the default judgment, until she learned of the garnishment on Paw Spa's bank account. At the time of her testimony, Kusmierski was married to Irish. Paw Spa was created in 2012, prior to their marriage. Kusmierski confirmed that she was the "sole member" and the "sole managing member" of Paw Spa, which boards dogs and also provides daycare and grooming, and that Irish had no interest in Paw Spa. She also confirmed that Irish does not have any management authority over Paw Spa, although on cross-examination she stated Irish may have been a manager "in the very beginning". She did not recall that he was ever a member, and she stated that he had never been an owner of the business. Kusmierski was questioned on cross-examination about a video on the Paw Spa website, and she agreed that she had the authority to tell the person who managed Paw Spa's website what content could be on the website.

- 4 -

Kusmierski agreed that a "Best of Omaha 2015" video, still posted on the Paw Spa website at the time of the hearing, contained a brief interview with someone labeled in the video as "Kevin Irish" with the word "Owner" listed under the name.

Kusmierski testified that she was not aware of "any loan" Irish took out with ODK, that she never authorized Irish to sign any such loan, and that she would never have agreed to the interest rate reflected in the BLSA. Kusmierski denied that her company had "the ability to utilize any funds from this purported loan." Kusmierski testified that no ODK funds were maintained in any accounts of Paw Spa and that Paw Spa had never "been able to make use of any funds from [ODK] for its business purposes." She denied that Paw Spa had ever conducted any business in Utah, and she testified that Paw Spa's customers were located in the "Omaha/Metro area, normally," and "from Iowa sometimes."

Kusmierski testified that she learned about the garnishment from her bank and that she had not been aware that Paw Spa had a judgment against it in Utah. She testified further that as the managing member of Paw Spa she was never served with any paperwork associated with the Utah lawsuit, that she never authorized anyone to accept service on behalf of Paw Spa, and that Irish was not authorized to do so.

Kusmierski confirmed that, after receiving "the affidavit from ODK," she and Paw Spa's current attorney "looked up the case reference in Utah," and that they "found among the pleadings an unsworn declaration of service on the Utah court's website." This declaration, one of the documents attached to Kusmierski's affidavit, specifies that the "Summons" and "Complaint with Exhibits" were served at a particular address in Omaha on July 6, 2023, by leaving the documents with Irish, "who as Registered Agent is authorized by appointment or by law to receive service of process for [Paw Spa]." According to Kusmierski's testimony, this is the address at which she and Irish then resided; it is also the address identified in filings with the Secretary of State as Paw Spa's "designated office." When Paw Spa's attorney attempted to question her about details of the declaration, the district court sustained ODK's objection that "proper foundation" had not been laid "for this document she's testifying about." After Kusmierski was questioned further about the process that she and Paw Spa's attorney used to locate the declaration, ODK's attorney objected again "to this evidence," noting that "[t]he proper format for judicial records or court records is an authenticated copy." The court agreed that "nothing is certified" by the Utah court and sustained the objection. At that point, Paw Spa's attorney noted that he had not yet offered the declaration as an exhibit. The court then stated, "Well, I'm not going to let her testify about it either and let that in as evidence. It's not certified." Kusmierski's affidavit was admitted as an exhibit at a later point in the hearing over ODK's objection that it was cumulative. Although no reference was made to the admission or exclusion of the attachments to the affidavit at that point, we read the court's ruling earlier in the hearing to mean that it was not receiving the declaration attached to the affidavit as evidence.

Kusmierski indicated that Paw Spa was created by an attorney who had recently retired. That attorney was not available when she contacted his office the week before the hearing. She indicated that she was given "a replacement associate to reach out to," but that person was not available either. Kusmierski was asked if she brought Paw Spa's operating agreement with her to the hearing. She denied knowing anything about an operating agreement for Paw Spa and indicated that she had never seen one. Kusmierski testified that she had relied on the retired attorney to

prepare and file "whatever [she] needed." She did not know whether the attorney had ever created an operating agreement for Paw Spa.

Documentation in another lawsuit involving Paw Spa was received as an exhibit at the hearing. The exhibit included a complaint filed in Douglas County in 2020 by an individual (Vince Leisey) against Paw Spa, Irish, and Kusmierski, seeking judgment for the amount due on a promissory note. The promissory note, dated October 18, 2012, stated that Paw Spa agreed to pay Leisey the principal sum of the note plus interest. The note was signed by Kusmierski as "manager" for Paw Spa and also by Irish as "manager" for Paw Spa. The complaint in the 2020 case included an allegation that Paw Spa, with Irish and Kusmierski as personal guarantors, executed and delivered the promissory note to Leisey. Paw Spa, Irish, and Kusmierski's answer in the 2020 case was included in the exhibit received in this case. In the answer, they admitted that "a Promissory Note was executed."

On November 21, 2024, the district court entered an order denying Paw Spa's motion to quash and vacate. The court rejected Paw Spa's challenges to the Utah court's personal jurisdiction over it, and we discuss the district court's findings in further detail in the analysis section below. The order, signed by the district court judge on November 20, 2024, includes a notation that it was prepared and submitted by the law firm that represented ODK in the garnishment proceedings. On November 22, the court entered an order to deliver non-exempt funds, directing "the garnishee" to transfer $60,002.75 to the court for payment of "the judgment creditor." Paw Spa subsequently perfected its appeal to this court.

## III. ASSIGNMENTS OF ERROR

Consolidated, reordered, and restated, Paw Spa assigns that the district court erred in (1) failing to sustain its objections to Pugh's affidavit, (2) adopting an order drafted wholly by opposing counsel, and (3) denying its motion to quash the garnishment and vacate the registered judgment.

## IV. STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *In re Masek Family Trust*, 318 Neb. 268, 15 N.W.3d 379 (2025).

The Full Faith and Credit Clause of the U.S. Constitution prohibits a Nebraska court from reviewing the merits of a judgment rendered in a sister state, but a foreign judgment can be collaterally attacked by evidence that the rendering court was without jurisdiction over the parties or the subject matter. *Russell v. Bridgens*, 264 Neb. 217, 647 N.W.2d 56 (2002). The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court; however, findings of the lower court as to underlying factual disputes, if any, in regard to the jurisdictional issue will be upheld unless they are clearly erroneous. *Carrizales v. Creighton Saint Joseph*, 312 Neb. 296, 979 N.W.2d 81 (2022).

## V. ANALYSIS

### 1. RECEIPT OF PUGH'S AFFIDAVIT

Paw Spa assigns that the district court erred in failing to sustain Paw Spa's objections to Pugh's affidavit. Paw Spa objected to paragraphs 3-5 of the affidavit where Pugh "opines the defendants did certain things," stating, "There's no proper and sufficient foundation for a [c]ustodian of [r]ecords to render an opinion as to whether or not the defendants entered into the BLSA, what law governs the BLSA or what payments were purportedly required to be made by defendants." The court overruled the foundation objection, noting that "Paw Spa . . . is on the BLSA documents attached."

A party may not assert a different ground for an objection to the admission of evidence than was offered to the trial court. See *id.* Paw Spa did not object on hearsay grounds to any portion of Pugh's affidavit or to the receipt of the attached documents and does not argue on appeal that documents attached to Pugh's affidavit were inadmissible hearsay. Even if Paw Spa had objected on hearsay grounds and challenged receipt of the attached documents before the district court and on appeal, Pugh's statements were sufficient to establish foundation under the business records exception to the hearsay rule. Pugh's affidavit establishes that she is a records custodian for ODK and in paragraph 3 of the affidavit, she stated that the attached documents were true and correct copies of records kept as part of ODK's regular business activities and were made at or near the time that the reflected transactions took place. The party seeking to admit a business record under Neb. Rev. Stat. § 27-803(5)(a) (Cum. Supp. 2024) bears the burden of establishing foundation under a three-part test. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017) (proponent must establish that activity recorded is of type that regularly occurs in course of business' day-to-day activities; record was made as part of regular business practice at or near time of event recorded; and must authenticate the record by custodian or other qualified witness). We see no error in the court's admission of paragraph 3 of Pugh's affidavit.

Paragraph 4 recites the date of the BLSA and references where certain provisions of the BLSA are found within that document. Paragraph 5 states that after the defendants failed to make required payments under the BLSA, ODK filed the Utah lawsuit. We do not read these paragraphs as an opinion by Pugh that the defendants "did certain things." These paragraphs merely recite details either found in the documents attached to Pugh's affidavit or elsewhere in the record, and as noted above, Paw Spa did not object on hearsay grounds and did not challenge receipt of the attached documents themselves. Again, we see no error in the district court's admission of paragraphs 4-5 of Pugh's affidavit. This assignment of error fails.

### 2. ADOPTION OF ORDER DRAFTED BY OPPOSING PARTY

Paw Spa assigns that the district court erred in adopting an order drafted wholly by opposing counsel. It argues that in adopting ODK's proposed order verbatim, the court "shirked its responsibilities and deprived [Paw Spa] of its due process rights." Brief for appellant at 46.

A trial court in a case tried to the court without a jury may adopt a party's proposed findings of fact verbatim provided that the findings and conclusions reflect the court's independent view and judgment of the evidence. *Wayne L. Ryan Revocable Trust v. Ryan*, 308 Neb. 851, 957 N.W.2d 481 (2021). Although findings drawn by the trial court itself are more helpful to the appellate court,

findings prepared by counsel and adopted verbatim by the trial judge are formally the judge's and will stand if supported by evidence. *Id.* The adoption of a party's proposed findings does not require an appellate court to set aside the deference ordinarily given to the trial judge's factual findings. *Id.* When accepting a party's proposed findings, minor mistakes that do not prejudice a party constitute harmless error; however, a trial court may commit error if the proposed facts or law are unsupported by the evidence and cause prejudice. *Id.* The critical inquiry is whether such findings, as adopted by the court, are clearly erroneous. *Id.*

In this case, at the close of the hearing on Paw Spa's motion, the district court gave both parties leave to submit briefs and/or proposed orders. At the hearing, Paw Spa's attorney did not object to this procedure and even asked and received permission to "submit a proposed order in lieu of a brief." One may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error. *Eletech, Inc. v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021). Paw Spa has waived any error in the procedure proposed at the hearing on its motion.

Despite asking to submit a proposed order, the record reflects that Paw Spa submitted a brief that was filed with the court on November 18. The court's order ruling on Paw Spa's motion reflects that it was prepared and submitted by the law firm representing ODK. The order was signed by the judge on November 20, 2024. In its brief, Paw Spa points to certain findings in the court's order as being unsupported by the evidence. To the extent those findings are relevant to the court's denial of Paw Spa's motion to quash, we have addressed them below.

### 3. DENIAL OF MOTION TO QUASH

Paw Spa assigns that the district court erred in denying its motion to quash the garnishment and vacate the registered judgment. Paw Spa argues the Utah court did not have jurisdiction over it because Paw Spa did not receive proper service of process in the Utah case and Irish did not have authority to bind Paw Spa to the BLSA. We address each argument in turn.

Under the Full Faith and Credit Clause of art. IV, § 1, of the federal constitution, a judgment rendered in the court of a sister state which had jurisdiction has the same validity and effect in Nebraska as in the rendering state. *Burnett v. Maddocks*, 294 Neb. 152, 881 N.W.2d 185 (2016). The validity and effect of a judgment is determined with reference to the laws of the rendering state. *Id.* While it is presumed that a foreign court rendering a judgment had jurisdiction over the parties, a foreign judgment can be collaterally attacked by evidence that the rendering court was without such jurisdiction, so long as the attack is timely done within the framework of the NUEFJA. *Gem City Bone & Joint v. Meister*, 306 Neb. 710, 947 N.W.2d 302 (2020). If a judgment on its face appears to be one entered by a court with jurisdiction, such jurisdiction will be presumed, unless disproved by extrinsic evidence or by the record itself. See *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999).

### (a) Service of Process

Proper service, or a waiver by voluntary appearance, is necessary to acquire personal jurisdiction over a defendant. *State ex rel. Seeman v. Lower Republican NRD*, 319 Neb. 681, 24 N.W.3d 874 (2025). See *Griffin v. Snow Christensen & Martineau*, 570 P.3d 357 (Utah 2025) (for court to acquire personal jurisdiction over litigant, there must be proper issuance and service of

summons). The defendant has the burden of showing invalid service. See *Southland Const. v. Semnani*, 20 P.3d 875 (Utah 2001).

The default judgment from the Utah court shows that the defendants were served "pursuant to Rule 4(d)(1)." In denying Paw Spa's motion to quash, the district court found that Paw Spa did not meet its burden to rebut the presumption that the Utah court obtained personal jurisdiction over it through service in accordance with the Utah Rules of Civil Procedure. We agree. Rule 4(d)(1)(E) of the Utah Rules of Civil Procedure states that a summons and complaint may be served in any state by personal service upon a limited liability company by

> delivering a copy of the summons and complaint to an officer, a managing or general agent, or other agent authorized by appointment or law to receive process and by also mailing a copy of the summons and complaint to the defendant, if the agent is one authorized by statute to receive process and the statute so requires. If no officer or agent can be found within the state, and the defendant has, or advertises or holds itself out as having, a place of business within the state or elsewhere, or does business within this state or elsewhere, then upon the person in charge of the place of business.

The Utah Supreme Court has interpreted "managing or general agent" to refer to "a person with general power involving the exercise of judgment and discretion, as opposed to an ordinary agent who acts under the direction and control of the principal." *Griffin, supra*, 570 P.3d at 364.

At the hearing on Paw Spa's motion, Kusmierski testified that she is the registered agent for Paw Spa and that she was never served with the summons or complaint in the Utah case. As noted in the district court's order, "The returns of service from the Utah case were offered by [Paw Spa], but not admitted as there was insufficient foundation for them." Paw Spa takes issue with this finding and argues that information on the unsworn declaration of service attached to Kusmierski's affidavit shows that service was not properly perfected. But, as noted above in this opinion, although the district court admitted Kursmierski's affidavit into evidence at the hearing, it clearly excluded the declaration of service and any evidence about its contents based on a lack of foundation. The court affirmed that evidentiary ruling when it signed the proposed order and adopted the findings therein as its own findings, including the finding that the declaration had been excluded from evidence.

Kusmierski testified that she is the owner and manager of Paw Spa, the sole member of the LLC, and its registered agent, but her testimony does not reveal anything about the operation of Paw Spa's business on a day-to-day basis. In its order, the district court observed that Kusmierski's testimony "did not show that there are no other persons who qualify as a managing or general agent under Utah law." The court also noted some evidence (the Leisey case pleadings and information on Paw Spa's website) showing that Paw Spa held Irish out as an "owner" and "manager" at times and that no action was taken to correct Irish when he held himself out as being an "owner" or "manager." We also note Kusmierski's testimony that Irish may have been a manager when Paw Spa was first established. We find no error in the district court's conclusion that Paw Spa did not rebut the presumption of proper service.

(b) Personal Jurisdiction

The Utah Supreme Court has stated:

- 9 -

The authority of the state to hale a nonresident into a state court hinges on the ability to establish personal jurisdiction. There are two categories of personal jurisdiction: specific jurisdiction and general jurisdiction. 'General personal jurisdiction permits a court to exercise power over a defendant without regard to the subject of the claim asserted' and is dependent on a showing that the defendant conducted 'substantial and continuous local activity in the forum state.' . . . .

'[S]pecific personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state' and only if the defendant has 'certain minimum local contacts.' Whether we have specific jurisdiction depends on two inquiries. 'First, do [the plaintiff's] claims arise from one of the activities listed in the [long-arm] statute,' and second, whether the 'defendant's contacts with this forum [are] sufficient to satisfy the due process clause of the fourteenth amendment.' In determining whether specific jurisdiction exists, our analysis begins with the long-arm statute. 'If the relevant state statute does not permit jurisdiction, then the inquiry is ended; if it does, then the question is whether the statute's reach comports with due process.'

*Pohl, Inc. of America v. Webelhuth*, 201 P.3d 944, 949-50 (Utah 2008) (citations omitted).

Here, the district court reviewed Utah's long-arm statute and found that it allowed for jurisdiction over Paw Spa because Paw Spa had transacted business within Utah. Section 78B-3-205(1) of Utah's Nonresident Jurisdiction Act states that any person who transacts business within the state is subject to the jurisdiction of Utah's courts. Elsewhere, the Act states that "to ensure maximum protection to citizens of [Utah]," the Act's provisions "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code § 78B-3-201. The Act defines the "any person" to mean "any individual, firm, company, association, or corporation" and the term "transaction of business within this state" to mean "activities of a nonresident person, his agents, or representatives in this state which affect persons or businesses within the state." Utah Code § 78B-3-202. The district court also noted that with respect to interstate contractual obligations, the United States Supreme Court has emphasized that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985).

As support for its conclusion that personal jurisdiction over Paw Spa was established under Utah's long-arm statute, the district court reviewed the evidence of Paw Spa's contacts with Utah. It reviewed the language of the BLSA, noting section 41, which provides that the agreement is governed by Utah law to the extent not preempted by federal law and states the borrower's understanding and agreement that ODK is located in Utah, makes its credit decisions from its office in Utah, that the loan is made in Utah with no binding contract being formed until ODK received and accepts borrower's signed agreement in Utah, and that borrower's payments are not accepted until received by ODK in Utah. The court also noted the transaction history for the loan included in the documents attached to Pugh's affidavit, which the court found showed that the loan

was disbursed, and weekly payments were made to the loan balance. Paw Spa takes issue with the court's conclusions that the loan was disbursed and that weekly payments were made. However, the court's finding accurately reflects the information found in the transaction history document attached to Pugh's affidavit and does not equate to a finding of who had access to the money once disbursed or who actually made the payments reflected. Finally, the court noted the statement in Pugh's affidavit that ODK is a Utah limited liability company located in Utah. We agree that on its face, the BLSA and transaction history documents establish Paw Spa's minimum contacts with Utah. As it did before the district court, Paw Spa rejects this evidence, asserting that Irish did not have authority to bind Paw Spa to the loan agreement. We have considered that argument below.

Before addressing Paw Spa's arguments about Irish's authority to bind Paw Spa to the BLSA, the district court considered two other provisions of the BLSA and relevant Utah law. First, the court noted Paw Spa's consent to Utah's jurisdiction pursuant to section 32 of the BLSA, which provides that any action or proceeding to enforce or arising out of the agreement may be brought in any Utah court. Utah courts follow the Restatement (Second) of Conflict of Laws § 80 (1988) and will enforce a forum selection clause unless it is unfair or unreasonable or there is no rational nexus between the litigation and the State of Utah. See *Rocky Mountain Builders Supply Inc. v. Marks*, 392 P.3d 981 (Utah App. 2017). We see no evidence that the forum selection clause in the BLSA is unfair or unreasonable. The district court found that ODK's location in Utah established the rational nexus. We find no error in this conclusion, subject to our analysis of the evidence as to Irish's authority to bind Paw Spa to the BLSA.

Paw Spa has complained that the BLSA was electronically signed and does not bear an original handwritten signature. The district court noted that section 46 of the BLSA authorizes electronic signatures. The court also noted Utah's Uniform Electronic Transactions Act, which provides that parties may agree to conduct transactions by electronic means. Utah Code § 46-4-105. The Act further provides that "[a] record or signature may not be denied legal effect or enforceability solely because it is in electronic form." Utah Code § 46-4-201(1). The Act defines "[e]lectronic signature" to mean "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Utah Code § 46-4-102(8). The district court concluded that under Utah law, Irish's electronic signature on the BLSA was enforceable. We agree, again, subject to analysis of Irish's authority to bind Paw Spa to the agreement.

In addressing whether the evidence supported a conclusion that Irish had authority to bind Paw Spa to the BLSA, the district court reviewed Nebraska statutes concerning the management of limited liability companies. Neb. Rev. Stat. § 21-136(a) (Reissue 2016) provides that a limited liability company is member-managed unless the operating agreement expressly provides that the company is manager managed, that it is managed by managers, that management of the company is vested in managers, or used words of similar import. In a member-managed company, the company's management and conduct are vested in the members and each member has equal rights in the management and conduct of the company. § 21-136(b). Based on the evidence submitted at the hearing, the district court found the management structure of Paw Spa to be unclear. Kusmierski testified that she was the "sole managing member" and "sole member." She also testified that Irish did not have authority to enter into the underlying loan agreement for Paw Spa. The district court noted that further testimony from Kusmierski established that Irish may have

been a manager and/or owner. Paw Spa takes issue with this statement, but we note Kusmierski's testimony that Irish might have been a manager "in the very beginning." When asked about the video found on Paw Spa's website, Kusmierski agreed that based on the video, Irish "held himself out as an owner of the business," but she stated that she was not aware of any other instances of Irish "saying he was an owner." The district court noted that Paw Spa did not offer Paw Spa's operating agreement to clearly establish who was/is authorized to manage Paw Spa. Paw Spa argues that a single member limited liability company does not require an operating agreement, however, it does not provide any specific authority for this assertion. We note Neb. Rev. Stat. § 21-102(14) (Cum. Supp. 2024), which defines "[o]perating agreement to mean "the agreement, whether or not referred to as an operating agreement and whether oral, in a record, implied, or in any combination thereof, of all of the members of a limited liability company, including a sole member. The term includes the agreement as amended or restated."

Based upon "the defendant's conflicting testimony," the district court did not find Kusmierski's testimony concerning the management of Paw Spa credible. It noted that it was Paw Spa's burden to establish that the Utah court did not have jurisdiction, and it concluded that the evidence presented did not establish that Irish did not have authority to enter into the loan agreement.

Paw Spa takes issue with the district court's credibility finding, but the district court's adoption of ODK's proposed findings does not require this court to set aside the deference ordinarily given to the trial judge's factual findings. See *Wayne L. Ryan Revocable Trust v. Ryan*, 308 Neb. 851, 957 N.W.2d 481 (2021). Paw Spa has not directed us to findings of fact or law in the order that are unsupported by the evidence and cause prejudice. See *id.* The real difficulty in evaluating Irish's authority is the lack of any evidence about Irish beyond the fact that he is or was married to Kusmierski at the time the BLSA was signed, he and Kusmierski resided at the same location, and he had some connection to the business as evidenced by the video on Paw Spa's website and the pleadings in the Leisey case. Paw Spa notes that "the burden is on the person dealing with a known agent, not to deal blindly and trust the agent's representations as to the extent of his powers, but to use reasonable diligence and prudence to ascertain whether the agent acts within the scope of his powers." *Western Fertilizer v. BRG*, 228 Neb. 776, 785, 424 N.W.2d 588, 594 (1988). Here, however, it was Paw Spa's burden to show that the Utah court did not have jurisdiction. ODK presented evidence showing that Irish's electronic signature appears on the BLSA, which identifies Paw Spa as the borrower. We find no error in the district court's conclusion that Paw Spa did not present evidence sufficient to establish that Irish did not have authority to enter into the loan agreement.

Because the evidence did not establish that the Utah court did not have personal jurisdiction over Paw Spa, the district court did not err in denying Paw Spa's motion to quash and vacate.

## VI. CONCLUSION

The district court did not err in overruling Paw Spa's objections to Pugh's affidavit, adopting the proposed order drafted by ODK's counsel, or in denying Paw Spa's motion to quash the garnishment and vacate the registered judgment. Accordingly, we affirm.

AFFIRMED.